## LAWRENCE MANUFACTURING COMPANY *v.* TENNESSEE MANUFACTURING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF TENNESSEE.

No. 101. Argued December 3, 1890. — Decided March 2, 1891.

An exclusive right to the use of words, letters or symbols, to indicate merely the quality of the goods to which they are affixed, cannot be acquired.

If the primary object of a trademark be to indicate origin or ownership, the mere fact that the article has obtained such a wide sale that it has also become indicative of quality, is not of itself sufficient to make it the common property of the trade, and thus debar the owner from protection; but, if the device or signal was not adopted for the purpose of indicating origin, manufacture or ownership, but was placed upon the article to denote class, grade, style or quality, it cannot be upheld as technically a trademark.

Unfair and fraudulent competition against the business of another, with intent on the part of the offender to avail himself of the reputation of the other, in order to palm off his goods as the goods of the other, would, in a proper case, constitute ground for relief in equity; but the deceitful representation or perfidious dealing must be made out or be clearly inferable from the circumstances.

*Canal Company* v. *Clark*, 13 Wall. 311, quoted, approved and applied.

THIS was a bill of complaint filed by the Lawrence Manufacturing Company, a corporation of Massachusetts, against the Tennessee Manufacturing Company, a corporation of Tennessee, in the Circuit Court of the United States for the Middle District of Tennessee, alleging that plaintiff had been, and was, engaged in the manufacture and sale of sheetings; that in said trade several standards or classes of goods were generally recognized, the first of which included sheetings of such weight that two and eighty-five one-hundredths yards thereof would weigh a pound; the second, sheetings of such weight that three yards would weigh a pound; and the third, sheetings of such weight that four yards would weigh a pound; that prior to the year 1870 the plaintiff "adopted and there-

upon became duly vested with the exclusive right to use a label or trademark for all goods of its manufacture coming within said third class, to distinguish sheetings of its manufacture from sheetings of the same general class manufactured by others, the substantive, distinctive and chief feature of which label was, and is, an arbitrary sign or symbol, consisting of the capital letters 'LL' prominently and separately appearing upon such label or stamp; that said trademark, with certain environments, which have been changed from time to time, has been so used by complainant since said date of adoption, and, to wit, for more than fifteen years, and has been imprinted upon each and every piece or bolt of such sheetings of said third general class made and sold by complainant during said period;" that said trademark was so adopted by plaintiff for the purpose of distinguishing sheetings of its manufacture of the third general class from similar goods manufactured by others; that in connection with the trademark, or substantive element of said label, under and in connection with which the trade reputation of plaintiff had been established, plaintiff had used the words "Lawrence Mills," and the word "Sheetings," in different juxtapositions, and also at times a picture or representation of a bull's head, and at other times a picture or representation of a "bull rampant," and in connection therewith and underneath the same, and in a separate position, has always used said capital letters "LL" as and for the purpose aforesaid; that plaintiff had earned and acquired a trade reputation of great value as manufacturers of sheetings under its trademark, with the result that sheetings of the third general class of plaintiff's manufacture had come to be universally known as "LL sheetings," "and sheetings so known, named and called for, import the excellent raw material, the method and care of manufacture, and the general guaranty of excellence and lasting quality for which your orator has a long, valuable and thoroughly established reputation as to all goods of its manufacture;" that since plaintiff became vested with the exclusive right to the use of the trademark, namely, from the first of January, 1884, to the present time, the defendant had been manufacturing and selling large quantities

of sheetings of said third general class, upon which, and for the purpose of taking advantage of plaintiff's trade label, trademark and, trade reputation, defendant had placed a stamp or label in imitation of the stamp or label of plaintiff, and so in imitation thereof as to tend to deceive the public, and had upon its said stamp or label on its sheetings printed or stamped the capital letters "LL" prominently and separately from the other parts of its label; that the acts and doings of the defendant tended to deceive the public and to constitute a fraud upon them as well as upon the plaintiff; and that the appropriation and wrongful use of the letters "LL" was for the purpose and with the tendency and effect of appropriating a part, at least, of the good will and trade-reputation of the plaintiff; wherefore plaintiff prayed for an injunction and for an account of all gains and profits realized by defendant and for damages.

The answer admitted that in the trade of sheetings there were several recognized classes based upon the difference in weight of the goods per yard, and among them four classes running two and $\frac{85}{100}$, three, four and five yards to the pound; and that the products of different manufacturers, though coinciding in the standard of weight, differed in texture and durability. Defendant denied that either prior to 1870, or at any other time, plaintiff adopted and thereupon became duly vested with the exclusive right to use a label or trademark upon all goods of its manufacture coming within the third class, having as its substantive, distinctive and chief feature, a symbol consisting of the capital letters "LL" prominently and separately appearing on such label or stamp; and denied that at the time alleged or before or since plaintiff adopted or had used such symbol for the purpose of distinguishing sheetings of its manufacture from similar goods manufactured by others. Defendant admitted that plaintiff had used the letters "LL" upon sheetings of the third class, and had also impressed upon the goods "Lawrence Mills" and the word "Sheetings," and at times the representation of a bull rampant, but charged that the words "Lawrence Mills" were used to designate that the goods were made by plaintiff and

to distinguish its manufacture from sheetings of the third class made by others, and that the representation of the bull and the words "Lawrence Mills" constituted plaintiff's trademark, if it had any, and that the letters "LL" were used solely to denote the class or grade of sheetings upon which they were impressed. Defendant denied that sheetings of the third class of plaintiff's manufacture were universally known as "LL sheetings," but asserted that it was generally understood in the trade and by consumers that the capital letters "LL" are placed on sheetings weighing one-fourth of a pound to the yard to designate those of that class, and that they are thus used in common by all manufacturers of sheetings of this weight; that plaintiff's sheetings thus stamped are known in the trade as "Lawrence LL sheetings," and defendant's are known as "Cumberland LL sheetings," and that the same class of goods of other well-known makers in the United States are marked LL and recognized and distinguished according to their respective trademarks denoting origin, as "Aurora LL," "Buckeye LL," "Beaver Dam LL," and many others; that plaintiff manufactures besides the Lawrence LL sheetings sheetings of the same weight and class, but of a different quality, and brands them "Shawmut," with the addition of the capital letters "LL," so that purchasers buying LL sheetings, made by plaintiff, are forced to designate the quality desired by ordering "Lawrence LL" or "Shawmut LL," as the case may be. Defendant admitted that since April, 1885, it had stamped upon its cotton goods weighing one-fourth of a pound to the yard the words "Cumberland" and "Sheetings" in horizontal lines, with the figures "4–4" beneath them, and with the capital letters "LL" below the figures "4–4;" that the word "Cumberland," from the river near which its works are located, was used to designate its manufacture and as a trademark; the word, "Sheetings," to signify the general character of the goods; that the letters "LL" were used to denote the class to which the sheetings belonged, and the figures "4–4" to indicate that the goods were one yard wide; but denied that for the purpose of taking advantage of plaintiff's trade, it had placed on the said goods a stamp or label in

imitation of plaintiff's stamp or label, with intent to and with the effect of deceiving the public; and denied that its stamp or label bore any resemblance to that of the plaintiff or that even the most casual observer would take the one for the other; and denied that it had sold with the stamp or label designated goods of less weight than it claims the said letters indicate, with the qualification that there may exist slight variations above or below the standard, mathematical exactness not being uniformly attainable by any manufacturer, and such variations existing in plaintiff's goods. Defendant averred that plaintiff could not lawfully set up any claim to the exclusive use of the capital letters LL as a trademark, for they did not indicate any ownership of the goods upon which they are impressed, and did not have the characteristics for making them a lawful trademark, and standing alone conveyed no meaning, while the words ": Lawrence Mills," used on plaintiff's labels, indicated the origin of said goods and plainly advertised that they were made by plaintiff. Defendant further stated, that before plaintiff used the letters "LL," they were stamped and used by the Atlantic Mills, in the United States, on a grade of sheetings manufactured by them, and said letters had never been by the trade and general public accepted as a trademark of plaintiff or as forming an element of the same, but their accepted signification was that they represented a class of goods and not origin or ownership.

Replication having been filed, the cause came on for hearing April 28, 1887, before Judge Jackson, upon the pleadings and voluminous depositions taken by the respective parties, and resulted in a decree dismissing the bill. The opinion of the Circuit Court will be found in 31 Fed. Rep. 776.

In a painstaking review of the evidence, the Circuit Court stated the facts to be, that, prior to 1867, plaintiff branded its four-yard sheetings with a picture of a bull in a rampant position in connection with the words "Lawrence Mills," and the single capital letter "L;" that in 1867, plaintiff added another capital letter "L," at which time plaintiff was a well-known manufacturing company and had manufactured and sold large

quantities of four-yard goods; that in 1883, plaintiff substituted for the bull rampant, the bull's head; that, since 1867, plaintiff had put upon the market, continuously, a sheeting of the same weight as its third class goods of first quality, but inferior and of less value than the former, which it branded "Shawmut LL sheetings," and that it made two other kinds of brown sheetings graded according to weight, one of which it stamped "XX," and the other "XXX," to denote distinction in grade; that plaintiff had for many years advertised its sheetings in a well-known dry goods advertising periodical, heading its advertisement with the picture of a bull's head, the words "Lawrence Mills" and the letters "XX," "XXX" and "LL;" that plaintiff made flannels and denims on which it used the picture of a bull's head and the words "Lawrence Mills" as on the four-yard sheetings, but not the letters "LL;" that letters of the alphabet have for many years been employed by manufacturers to designate grades and qualities of goods, and almost the entire alphabet is so used, and it is understood generally, in the cotton goods trade, that letters are thus used to designate grade, class or quality; that it was also generally understood in the trade that "LL," as stamped on plaintiff's sheetings, meant four-yard goods, and that the words, "Lawrence Mills," in connection with the bull's head, were used to indicate the maker; that these goods were always invoiced by plaintiff as "Lawrence" or "Lawrence Mills" LL, and were thus generally known in the trade, except that in some instances persons who have been more familiar with them, or have handled them exclusively, called them simply "LLs," thereby meaning the sheetings made by the Lawrence Company, but usually said sheetings were described as "Lawrence LL" or "Lawrence Mills LL," just as other sheetings stamped with "LL" were generally known in the trade and spoken of as "Beaver Dam LL," "Badger State LL," "Aurora LL," "Cumberland LL," etc.; that the signification of the letters "LL" stamped upon cotton sheetings, as indicative of grade, class and quality, was generally understood in the trade when defendant commenced the use of said letters in 1885; that the Atlantic Mills of Lawrence, Massachusetts, stamped the letters

"LL" upon brown sheetings of its manufacture in the years 1860, 1862, 1864 and 1865, and from 1872 down to the present time; that there were cessations in the manufacture of said goods by the Atlantic Mills, from time to time, between 1860 and 1865, and between 1865 and 1872 none were thus stamped; that the weight of the Atlantic goods made in 1860 and stamped with the letters "LL" was 4.19 yards to the pound; that in 1862 the goods so stamped weighed 4.36 yards to the pound, and in 1863, 1864 and 1865, their weight was 4.56 yards to the pound; that in 1872, when the Atlantic Mills had again commenced placing the "LL" on its sheetings, they weighed, and ever since have weighed, five yards to the pound; that the Atlantic Mills, in 1860, made a grade of brown sheetings that weighed 3.89 yards to the pound, and which it stamped with the single "L;" that the Atlantic Mills employed said letters to distinguish between different grades of goods, and has continued to use letters for that purpose; that it is fairly deducible from the evidence that the Atlantic "LL" cotton sheetings were in the market in 1867; that the Atlantic goods were and are of the same general character and class as those upon which plaintiff stamps "LL," and they are so nearly alike to the "Lawrence LL" that ordinary buyers and even experts cannot by looking at them distinguish them from each other; that they are both used for the same general purpose and compete with each other; that looking only at the letters "LL" purchasers would as readily mistake "Shawmut LL" for "Lawrence LL" sheetings as they would "Cumberland LL" sheetings; that John V. Farwell & Co. have for several years been using a private brand for sheetings known in the trade as "Albany LL," and in 1884, and with full knowledge of this fact, plaintiffs stamped for Farwell & Co. four-yard sheetings with the label "Albany LL," the stamp being furnished by Farwell & Co., and returned to them with the goods, which were sold in the market as John V. Farwell & Co.'s "Albany LL sheetings;" that plaintiff had all the while known of the Atlantic Mills using the "LL" on its goods, and for more than six years before the commencement of this suit had been aware of the fact that numerous other

manufacturers had been stamping said letters on their four-yard cotton sheetings, and that it never objected until about the time of the bringing of this suit and one of a like character against the Aurora Cotton Mills at Chicago; that it did not appear that the brand of defendant had ever been mistaken for that of the plaintiff; that it was not shown that plaintiff, when it commenced using the letters "LL" on its third-class goods, adopted them for the purpose of making them its trademark or any substantial or material part thereof, nor that the single L, used prior to 1867, constituted in whole or in part its trademark; that the Atlantic Mills were using the single L on one grade or class of goods merely to indicate quality, from 1862 up to 1868; that under the proof it was clear that the purpose and design of the change from L to LL was not to indicate origin or ownership or to distinguish the sheetings on which said letters were stamped from similar goods manufactured by others, but that its primary object was to denote its class, quality or grade, and to represent it to the public as being different goods in class and quality from those primarily sold by plaintiff under the single L stamp.

The Circuit Court quoted from the evidence of plaintiff's agent that the "LL" was adopted "because it was a time when cotton goods were depreciating. We had made considerable sales of the single L; but a party who had bought a large lot was underselling us at a price lower than we could afford to meet, and I suggested that in order to keep them out of this competition the mills should change the fold of the single L from a narrow to a wide fold, and put on a double L."

The court held that the letters were not only originally used by plaintiff to indicate the grade of the sheetings on which they were stamped, but to convey the impression that they were different goods from those it had previously sold, and that they could not constitute a valid trademark, such as would give plaintiff the exclusive right to use them on third-class sheetings, weighing one-quarter of a pound to the yard; that it might well be doubted whether letters by themselves

or in combination could be employed to represent both the grade and quality of goods and their origin, thus performing at the same time the double office of a trademark and a description or classification of the article to which they were affixed, and be sustained as affording an exclusive right to the use of the device as a trademark, which would come into collision with the right of the public to use the letters in their other meaning; but that question was left undetermined, since the court concluded that the letters only indicated grade, class or quality, and not origin, ownership or manufacture. The court also held that the Atlantic Company so used the letters before their adoption by plaintiff, as to preclude the latter from acquiring a valid trademark therein; and that the putting upon the market of an inferior quality of cotton sheeting weighing four yards to the pound and branded "Shawmut LL," equally warranted the use of the letters by the defendant, and prevented plaintiff from claiming injury to its trade by such use. The court found further that the plaintiff was not entitled to relief on the ground that its label, or a distinctive part thereof, was being simulated by defendant so as to impose its goods upon the public as those of the plaintiff, since defendant had been guilty of no fraudulent intent, and had in no way either deceived the public or defrauded the plaintiff.

*Mr. J. H. Raymond* and *Mr. W. B. Hornblower* for appellant.

*Mr. A. J. Hopkins* and *Mr. J. M. Dickinson* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

After a careful examination of the evidence in this record, we are satisfied that the conclusions of the Circuit Court upon the facts are substantially correct. While there may be a conflict in some particulars, we regard the defendant's contention upon all points material to the disposition of the case as clearly sustained by the weight of the evidence, which we do not feel called upon to recapitulate.

In *Canal Company* v. *Clark*, 13 Wall. 311, 322, it was said by Mr. Justice Strong, speaking for the court, that " the office of a trademark is to point out distinctively the origin or ownership of the article to which it is affixed ; or, in other words, to give notice who was the producer. This may, in many cases, be done by a name, a mark or a device well known, but not previously applied to the same article. But though it is not necessary that the word adopted as a trade name should be a new creation, never before known or used, there are some limits to the right of selection. This will be manifest when it is considered that in all cases where rights to the exclusive use of a trademark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another ; and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all the authorities. Hence the trademark must either by itself, or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived. The first appropriator of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator, or manufacturer of the articles, is injured whenever another adopts the same name or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former. Thus the custom and advantages to which the enterprise and skill of the first appropriator had given him a just right are abstracted for another's use, and this is done by deceiving the public, by inducing the public to purchase the goods and manufactures of one person supposing them to be those of another. The trademark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association. And there are two rules which are not to be overlooked. No one can claim protection for the exclusive

use of a trademark or trade name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients or characteristics, be employed as a trademark and the exclusive use of it be entitled to legal protection. As was said in the well-considered case of *The Amoskeag Manufacturing Company* v. *Spear,* (2 Sandf. Superior Ct. 599,) 'the owner of an original trademark has an undoubted right to be protected in the exclusive use of all the marks, forms or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, figures or symbols, which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or a symbol, which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose.' "

We quote thus at length, because the decision is a leading one, which has been repeatedly referred to and approved as presenting the philosophy of the law applicable to trademarks in a clear and satisfactory manner, as should also, indeed, be said of Judge Duer's noted opinion in the case therein cited. *Manufacturing Co.* v. *Trainer,* 101 U. S. 51; *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218; *Goodyear Glove Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598; *Corbin* v. *Gould,* 133 U. S. 308.

Nothing is better settled than that an exclusive right to the use of words, letters or symbols, to indicate merely the quality of the goods to which they are affixed, cannot be acquired. And while if the primary object of the mark be to indicate origin or ownership, the mere fact that the article has obtained such a wide sale that it has also become indicative of quality, is not of itself sufficient to debar the owner from protection, and make it the common property of the trade, (*Burton* v.

*Stratton,* 12 Fed. Rep. 696,) yet if the device or symbol was not adopted for the purpose of indicating origin, manufacture or ownership, but was placed upon the article to denote class, grade, style or quality, it cannot be upheld as technically a trademark.

*Manufacturing Co.* v. *Trainer, supra,* which involved the use of the letters " A. C. A." in connection with a general device constituting a trademark, is very much in point, and the discussion by Mr. Justice Field, who delivered the opinion of the court, leaves little, if anything, to be added here. In that case as in this, there was some evidence tending to show that it was understood that the letters were used to indicate origin as well as quality, but it was considered to be entirely overborne by the disclosure of the name of the manufacturer in full and the history of the adoption of the letters to designate quality only, as narrated by complainant.

We held in *Menendez* v. *Holt,* 128 U. S. 514, 520, that the words " La Favorita " were so used as to indicate the origin of a special selection and classification of certain flour, requiring skill, judgment and expert knowledge, and which gave value and reputation to the flour. The name was purely arbitrary — a fancy name and in a foreign language — and did not in itself indicate quality. The legality of the trademark as such, (and it had been duly registered under the act of Congress,) was conceded by the answer, though it was contended in the argument that it was not valid because indicative only of quality; but we were of opinion that the primary object of its adoption was to symbolize the exercise of the judgment, skill and particular knowledge of the firm which adopted and used it, and that the phrase covered the wish to buy and the power to sell from that origin.

Since we are satisfied from the evidence that plaintiff failed to establish the existence of a trademark in the letters " LL," or that they constituted a material element in its trademark, relief cannot be accorded upon the ground of an infringement by defendant of an exclusive right in the plaintiff to use the letters as against all the world. The jurisdiction to restrain the use of a trademark rests upon the ground of the plaintiff's

property in it, and of the defendant's unlawful use thereof. *Boston Diatite Co.* v. *Florence Manufacturing Co.*, 114 Mass. 69.  If the absolute right belonged to plaintiff, then if an infringement were clearly shown, the fraudulent intent would be inferred, and if allowed to be rebutted in exemption of damages, the further violation of the right of property would nevertheless be restrained. *McLean* v. *Fleming*, 96 U. S. 245; *Menendez* v. *Holt*, 128 U. S. 514.

It seems, however, to be contended that plaintiff was entitled at least to an injunction, upon the principles applicable to cases analogous to trademarks, that is to say, on the ground of fraud on the public and on the plaintiff, perpetrated by defendant by intentionally and fraudulently selling its goods as those of the plaintiff. Undoubtedly an unfair and fraudulent competition against the business of the plaintiff—conducted with the intent, on the part of the defendant, to avail itself of the reputation of the plaintiff to palm off its goods as plaintiff's—would, in a proper case, constitute ground for relief.

In *Putnam Nail Co.* v. *Bennett*, 43 Fed. Rep. 800, where the bill alleged that the defendants had imitated plaintiff's method of bronzing horse-shoe nails, which plaintiff used as a trademark, with the intention of deceiving the public into buying their goods instead of plaintiff's, and the question came up on demurrer, Mr. Justice Bradley, after stating certain averments of the bill, said orally: "There is here a substantial fact stated, that the public and customers have been, by the alleged conduct of the defendants, deceived and misled into buying the defendants' nails for the complainant's. That averment is amplified in paragraph four of the bill. Now a trademark, clearly such, is in itself evidence, when wrongfully used by a third party, of an illegal act. It is of itself evidence that the party intended to defraud, and to palm off his goods as another's. Whether this is in itself a good trademark or not, it is a style of goods adopted by the complainant which the defendants have imitated for the purpose of deceiving, and have deceived the public thereby, and induced them to buy their goods as the goods of the complainant. This is fraud.

We think the case should not be decided on this demurrer, but that the demurrer should be overruled, and the defendants have the usual time to answer. The allegation that the complainant's peculiar style of goods is a trademark may be regarded as a matter of inducement to the charge of fraud. The latter is the substantial charge which we think the defendants should be required to answer." And see *New York &c. Cement Co.* v. *Coplay Cement Co.*, 44 Fed. Rep. 277.

In *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508, the plaintiffs had manufactured starch at Glenfield, which had become known as "Glenfield starch." They removed from Glenfield, but continued to call their starch by the same name. The defendant, though his place of business was at Paisley, commenced manufacturing starch at Glenfield, and selling the same in Scotland with the words "Glenfield starch" printed on the sale labels. This was interdicted by the Court of Session, but he continued to sell in England under a label of which "Glenfield" in larger or darker letters than any other on the packets was the pronounced feature, and the House of Lords held that he was putting the word Glenfield on his labels fraudulently and with the intention of making out that his starch was the starch of the plaintiff, who had by user acquired the right to the name of Glenfield starch, and enjoined him from so doing.

In *Thompson* v. *Montgomery*, 41 Ch. D. 35, 50, the plaintiffs and their predecessors had for a hundred years carried on a brewery at Stone, and their ale had become known as "Stone ale." They had registered several trademarks which contained the words "Stone ale" in combination with some device or name of their firm, and in 1888 they registered as an additional trademark the words "Stone ale" alone. The defendant built a brewery at Stone, over which he placed the words "Montgomery's Stone Brewery," with a device containing the words "Stone ale," and a monogram somewhat resembling the plaintiffs' trademark. It was held that the plaintiffs could not register "Stone ale" as a trademark under the act of Parliament in that behalf, but that they had acquired by user the right to the use of the words "Stone ale;" and that

the conduct of the defendant being, in the opinion of the court, calculated to deceive the public into supposing that his ales were brewed by plaintiffs, they were entitled to an injunction. Lord Justice Lindley remarked that, although the plaintiffs had no exclusive right to the use of the words " Stone ale " alone as against the world, or any right to prevent the defendant selling his goods as having been made at Stone, yet, " as against a particular defendant who is fraudulently using, or going to fraudulently use the words with the express purpose of passing off his goods as the goods of the plaintiffs, it appears to me that the plaintiffs may have rights which they may not have against other traders. In regard to that proposition, it appears to me that the Glenfield starch case has an extremely important bearing upon this case. The evidence in this case convinces me that any ale which may be sold by this particular defendant as ' Stone ale ' will be intended by him to be passed off as the plaintiffs' ale. I am satisfied that he does not use the words ' Stone ale ' for any honest purpose whatever, but according to the evidence with a distinctly fraudulent purpose. Is there any reason, then, why the court should not deal with him accordingly, and prevent him from carrying out such intention by restraining him from using the words which he will only use for that purpose? In my opinion the Glenfield starch case warrants us in going that length as against this particular defendant."

But the deceitful representation or perfidious dealing must be made out or be clearly inferable from the circumstances. If, in this case, the letters LL formed an important part of plaintiff's label, and the defendant had used them in such a way and under such circumstances as to amount to a false representation, which enabled it to sell and it did sell its goods as those of the plaintiff, and this without plaintiff's consent or acquiescence, then plaintiff might obtain relief within the principle of the cases just cited. But there is no such state of facts here. The brands are entirely dissimilar in appearance, and the letters have for years been understood generally as signifying grade or quality, and been so used by different manufacturers, and there is no proof justifying the inference of fraudulent

intent, or of deception practiced on the plaintiff or on the public.

*The decree is, therefore, affirmed.*

MR. JUSTICE BLATCHFORD did not sit in this case or take any part in its decision; nor did MR. JUSTICE BROWN, who was not a member of the court when the case was argued.