## FEIL v. AMERICAN SERUM CO.

(Circuit Court of Appeals, Eighth Circuit.
November 10, 1926.)

No. 7226.

1. **Trade-marks and trade-names and unfair competition ⬤—3(4)—"Wormix" held valid trade-mark for live stock remedy and entitled to registration (Comp. St. § 9490).**

"Wormix," an artificial word coined and used as the name of a remedy for hogs and other live stock, *held* not descriptive in such sense that it may not be used as a valid trade-mark and registered, under Comp. St. § 9490.

2. **Trade-marks and trade-names and unfair competition ⬤—3(1)—That trade-mark is composed of parts of two words does not always prevent registration.**

It is not always fatal to the qualification of a trade-mark for registration that it is composed of parts of two words.

3. **Trade-marks and trade-names and unfair competition ⬤—59(5)—Registered trade-mark "Wormix," for stock remedy, held infringed by trade-mark "Worm-X" (Comp. St. § 9501).**

"Worm-X," used by defendant as the name of a live stock remedy sold in competition with that made and sold by complainant under the registered trade-mark "Wormix," *held* a colorable imitation, and an infringement, under Comp. St. § 9501.

4. **Trade-marks and trade-names and unfair competition ⬤—93(1)—Fraudulent intent and misleading of public by infringer will be presumed, when on notice he refuses to cease use.**

In suits for infringement of registered trade-marks, where defendant has refused on notice to cease the use of an infringing device, and has continued to infringe, neither a fraudulent intent to injure complainant nor an actual misleading of the public need be proved, but both will be presumed.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Suit in equity by Sidney R. Feil, doing business as the Ivo-San Laboratory, against the American Serum Company. Decree for defendant, and complainant appeals. Reversed and remanded, with directions.

·For opinion below, see 6 F.(2d) 643.

B. M. Kent, of Cleveland, Ohio (Kwis, Hudson & Kent, of Cleveland, Ohio, on the brief), for appellant.

G. T. Struble, of Sioux City, Iowa (Jepson, Struble, Anderson & Sifford, of Sioux City, Iowa, on the brief), for appellee.

Before SANBORN, Circuit Judge, and WOODROUGH, District Judge.

WALTER H. SANBORN, Circuit Judge. This is an appeal from a decree of dismissal of a suit by the complainant, Feil, the owner of the trade-mark "Wormix," No. 161,134, registered November 7, 1922, to recover damages inflicted upon him by the defendant, American Serum Company, a corporation, by its infringement of his trade-mark by its use of the colorable imitation "Worm-X," and for an injunction against further infringement. The court below dismissed the bill on the ground that "Wormix" was incapable of becoming a trade-mark, because it was descriptive. In this court the case presents two questions: (1) Was "Wormix" so descriptive that it was disqualified from becoming a trade-mark? and (2) if it was not, was the use by the defendant of "Worm-X" in competition with it a colorable imitation and an infringement of that trade-mark?

In the year 1920 the complainant was and ever since has been engaged under the name of the Ivo-San Laboratory at Cleveland, Ohio, in the manufacturing, compounding, and selling of remedies for the diseases and afflictions of hogs, other livestock, and poultry. One of these remedies, manufactured and sold by it, was for the treatment of hogs, horses, sheep, and cattle for worms in the alimentary tract. This remedy the complainant made in the form of a powder packed in boxes on which it securely placed this mark "Wormix," and sold the remedy so marked in commerce among the states from about March, 1921, until the present time. On November 7, 1922, he registered "Wormix" as his trade-mark and obtained his certificate of registration thereof. He advertised his remedy under this mark in many trade papers at great expense, and built up a valuable good will and very profitable business. He has succeeded in selling his remedy so marked in more than three-fourths of the states in the United States. In 1922 the defendant commenced to make and sell in a liquid form, in bottles and like containers, a remedy to expel worms from the alimentary tracts of hogs. The defendant called, placed on, and secured to its containers in which it sold this remedy the mark "Worm-X," and advertised and sold it under that name in competition with the complainant's remedy, and thereby diminished and injured the business of the complainant, and continues so to do. On May 26, 1923, the complainant in writing notified the defendant that he owned and was using this trade-mark "Wormix," and requested it to desist from the use upon its remedy of the mark "Worm-X," on the ground that it was an infringement of the complainant's mark. The

defendant answered in writing that it was sure that its mark was not an infringement upon the complainant's trade-mark, continued to use the alleged infringing mark, and thereupon the complainant commenced this suit.

[1] We turn to the question whether "Wormix" was so descriptive as to render it incapable of becoming a valuable trade-mark. It seems to us that to the minds of the owners and dealers in hogs and cattle, and in the remedies for their afflictions, as well as to the public generally, this "Wormix" could not have suggested, much less have described, the complainant's remedy, its ingredients, or its object. There was no such word when the complainant conceived and placed "Wormix" on his containers as his trade-mark. To others than the complainant it had no meaning, was unintelligible and conveyed no information regarding his remedy, its ingredients, his purpose, or object. Now, after its use for many years to designate his medicinal powder, which relieves the alimentary tracts of hogs of worms, it is contended that it describes his remedy, because "Wormix" was formed by affixing the word "worm" to the "mix" of mixture. But there is no evidence that the conception of this mark "Wormix" ever existed in any mind but that of the complainant, until after he had conceived it and long used it to mark and sell his product. And, even if the mark was composed in the way claimed, we are not persuaded that "Wormix" would describe or mean to others than those already familiar with the remedy, and the use of it, its ingredients and effect, or the purpose or object of the remedy.

Moreover, this is not a suit for unfair competition; it is a simple suit for the infringement of a trade-mark, duly registered under the act of Congress of the United States. In such a suit the disqualification of a mark to become or be a valid trade-mark because it is descriptive must be determined by the provision of the act of Congress that "no mark which consists merely in the name of an individual, * * * or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely of a geographical name or term, shall be registered under the terms of this act." Compiled Statutes, § 9490.

We perceive nothing in "Wormix" to disqualify it from becoming a valid trade-mark under this statute. The complainant applied for its registration; the authorized and expert examiners in the Patent Office unavoidably considered and adjudged that "Worm-

ix" was not descriptive, within the meaning of the act of Congress, when they registered it and issued their certificate of registration, and the strong legal presumption is that the decision of this question by these qualified experts was correct.

The courts have sustained many trade-marks which came much nearer to being descriptive than does this trade-mark "Wormix." In Le Blume Import Co. v. Coty, 293 F. 344, 358, 359, the Circuit Court of Appeals of the Second Circuit said:

"We think that a word which is not in general or common use, and is unintelligible and nondescriptive to the general public, although it may be known to linguists and scientists, may properly be regarded as arbitrary and fanciful, and capable of being used as a trade-mark or a trade-name; and a word which has become obsolete, which is unintelligible and nondescriptive to the general public, may be regarded as arbitrary and fanciful, and entitled to be used as a trade-mark. We are satisfied that upon this record the word 'Lorigan' was properly registered as a trade-mark."

[2] It is not always fatal to a qualification of a trade-mark for registration that it is composed of parts of two words: "Cottalene" in Fairbank Co. v. Central Lard Co. (C. C.) 64 F. 133; "Cuticura" in Potter Drug & Chemical Corp. v. Miller (C. C.) 75 F. 656; "Ceresota" in Northwestern Consol. Mill. Co. v. Mauser & Cressman (C. C.) 162 F. 1004; "Holeproof" in Holeproof Hosiery Co. v. Wallach Bros. (C. C.) 172 F. 859. In our opinion this trade-mark "Wormix" was not descriptive, within the fair meaning of that term in the adjudication of the qualification of alleged trade-marks for registration. It seems to us to have been clearly entitled to registration and to be a valid trade-mark.

[3, 4] The other question in this case is: Was the use by the defendant of "Worm-X" on its remedies, made and sold by it in competition with the remedies and lawful trade-mark of the complainant, a violation of the statute and an infringement of that trade-mark? The statute declares that:

"Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, * * * or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use,

or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several states, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof." Compiled Statutes, § 9501.

The defendant claims that it did not become liable for damages and to an injunction under this statute, because its mark "Worm-X" was not a counterfeit, copy, or colorable imitation of the complainant's trade-mark "Wormix." But the two marks are practically idem sonans; they look alike; they are distinguishable by ordinary purchasers only by sharp and concentrated inspection. The testimony of the eyes is conclusive that they are likely to cause confusion and mistake by the public, and to deceive purchasers to buy the product of the defendant in the belief that it is the product of the complainant. The mark "Worm-X" is in our opinion clearly a colorable imitation of "Wormix." It is incredible that the defendant would ever have conceived or used "Worm-X," if it had not previously seen "Wormix," and known that the complainant was using it to identify and sell his product. The complainant notified the defendant in writing of his registered trade-mark, and requested it to cease its infringement, and it declined to do so. In suits for infringement of registered trade-marks, where the defendant has refused on notice to cease the use of an infringing device and has continued to infringe, neither a fraudulent intent to injure the complainant nor an actual misleading of the public need to be proved. They will be and are presumed. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 548, 549, 11 S. Ct. 396, 34 L. Ed. 997; Church & Dwight Co. v. Russ (C. C.) 99 F. 276, 279.

The decree below must be reversed, and the case must be remanded to the court below, with directions for further proceedings consistent with the views expressed in this opinion; and it is so ordered.