## J. A. LIVINGSTON, Inc., v. POCONO RUBBER CLOTH CO.

District Court, D. New Jersey.
Dec. 29, 1933.

Milton E. Mermelstein, of New York City (Abraham Shamos, of New York City, of counsel), for plaintiff.

Charles F. Dane, of New York City (William F. Hall, of Washington, D. C., of counsel), for defendant.

CLARK, District Judge.

The above-entitled case seems to this court another instance of the "failure of the human element." Both parties are manufacturers of textiles useful in the women's and children's ready-to-wear industry. The plaintiff also sells its fabricated material in the form of completed garments. The materials in litigation are a silk and a suede leather-like cloth which is rain-proof. The plaintiff adopted and registered for its material and for its finished products the trade-mark "Suavelle." The defendant, on the other hand, is using and has registered for its material the trade-mark "Swavel." Concededly there is sufficient similarity between these two names to occasion confusion both as a matter of law and (unfortunately not always a sequitur) of common sense.

Plaintiff's trade-mark was applied for on May 24, 1930, and registered March 24, 1931. The defendant's application was made January 16, 1931, and registered May 26, 1931. The former is in class 39, clothing (garments of silk material and the like). The latter is in class 50 (coated textile fabric). It is apparent that if the trade-mark division of the Patent Office had any sort of proper cross-indexing system, the registration of two such similar trade-marks would not have been permitted. The following is from the file wrapper, May 26, 1931: "A search of the Office records (Class 50) shows that no trade-mark like applicant's has been registered for use on the same kind of goods." That is the first totally unnecessary instance of human fallibility.

The second, in our judgment, arose out of the advice given to the defendant company by its counsel. On March 29, 1932, the Silk Association of America advised both parties of a conflict in trade-marks, and on April 4, 1932, plaintiff requested that the defendant cease using "Swavel" as a trade-name. There had hardly been time for the defendant's use to have ripened into anything of value and it could easily have been abandoned. One might suppose that counsel would have thus

appraised the position and have suggested the adoption of some new artificial name from a field which is manifestly limited only by the mathematical principles of permutations and combinations. Instead, however, the learned counsel followed what seems to be the natural bent of the legal mind and suggested a contentious course. As the result of his advice, a considerable amount of money has been spent by the defendant company in advertising the objected-to "Swavel." This money has in fact been expended on a lawsuit whose outcome, irrespective of this court's decision, must remain dependent upon the views of the judges of the Court of Appeals in a field of the law which is far from brightly outlined. Thus the issue is forced upon us and upon the parties, first, by an ineffective filing system in the Patent Office, and, second, by the legal temperament aforementioned.

We must acquit the defendant of any lack of good faith. Obviously it was a victim of the circumstances outlined in the preceding paragraph. Furthermore, the defendant tried scrupulously to distinguish its product by marking it with its name and adding the word "waterproof." The issue is one, then, solely of trade-mark infringement. It will be conceded that the plaintiff has no "volume and spread of trade" within the rule of those cases of which the Rolls Royce decision (C. C. A.) 4 F.(2d) 333, is typical. The issue is thus further narrowed to the question of essential characteristics or in the jargon of the statute (15 USCA § 85), adopted in the cases, of "the same descriptive properties."

Let us consider these "essential characteristics" according to their similarity or difference. Both litigated commodities are materials for women's garments. Both are used for the fabrication of such garments. Both are, therefore, sold first to fabricators of women's garments, and ultimately to the consumer who wears such garments. Both present a surface having a gloss. That is the inherent and typical quality of silk. The sheen of defendant's suede is artificial.

So much for the similarities; now for the differences or rather difference. That difference lies in the texture of the two materials. The defendant's is of a coarser fiber.

This results in a somewhat different appearance of course, but more important, it results in a different use. To classify materials as more suitable or appropriate for inner than for outer garments is difficult. Our female ancestors wore wool from top to bottom. Our female descendants wear silk from the skin out. In the materials of the principal case, we do find a characteristic which does distinguish and does admit of classification. The defendant's product is, speaking chemically, water-resistant or, in the language of the street, waterproof. This quality makes it "suitable and appropriate" only for garments which naturally would be exposed to water.

So we have two glossy materials, both used for women's garments, one thin and one thick, and one useless and the other useful vis à vis "rainy weather." On balance of these descriptive properties, will the public be confused? That in our opinion depends upon whether the public's mind is dominated by the "channel of trade" or by the character of the garment. The answer to that question is one upon which the minds of men and judges may reasonably differ. The minds of our circuit seem to incline towards emphasis on the channel of trade as the naturally dominating factor. It is true that in the case from which this impression is derived, Rosenberg Bros. & Co. v. Elliott (D. C.) 7 F.(2d) 962, the men's garments were both useful only for outer wear. In the principal case the plaintiff's material has utility for both inner and outer garments, whereas the defendant's is fashioned to keep out water and therefore is appropriate only when water is likely to get in. In the court's judgment, this difference is servient to and will be obscured in the mind of the average purchaser by their joint character as women's garments with a glossy or silk like finish.

We believe it is sound policy, and so law, to lean away from duplication of names and in favor of a broad interpretation of the phrase "the same descriptive properties." The "hard case" of the principal circumstances should not be permitted to modify that policy and that law.

Settle a decree in accordance with this opinion.