PLOUGH, Inc., v. INTERCITY OIL CO.
et al.

No. 7581.

District Court, E. D. Pennsylvania.

Feb. 17, 1939.

A. Yates Dowell, of Washington, D. C., and Howson & Howson and Kennard N. Ware, all of Philadelphia, Pa., for plaintiff.

A. D. Caesar, Charles W. Rivise, and I. Edward Master, all of Philadelphia, Pa., for defendants.

WELSH, District Judge.

The plaintiff, Plough, Inc., filed its bill of complaint to enjoin the Intercity Oil Company and the Eveready Oil Company from using the name "Eveready" in connection with the manufacture and sale of motor oils and greases, and for damages resulting from the alleged infringement of the plaintiff's registered trade mark, "Ever Ready," under which it distributes a lighter lubricant. Plaintiff also seeks to restrain the defendant, Eveready Oil Company, from using the same word as a part of its corporate title.

In 1922 the plaintiff began the manufacture and sale of a light oil lubricant under the brand name, "Ever Ready" which was registered and classed among "oils and greases" in the United States Patent Office. The product has always been marketed in a small hand-size can with spout attached and was adapted chiefly to the cleaning and lubrication of small machinery such as sewing machines, bicycles, lawnmowers and possibly certain automobile parts. It is not designed for use as a motor oil, nor for machinery requiring a heavy lubricant. Starting in 1932 the defendants engaged in the business of producing and selling motor oils and heavy greases in bulk and in large containers. They adopted "Eveready" as their trade mark and developed an extensive distribution in Eastern Pennsylvania and the adjoining states. At the time of the registration, the plaintiff, Plough, Inc., traded as the "Ever Ready Company" for the purpose of distributing its Ever Ready products, which fact is indicated in the certificate of registration. Defendants assumed the name "Eveready Oil Company" for a similar purpose, the Intercity Oil Company being the parent and producing company.

Plaintiff contends that the defendant's action, in adopting and using the name "Eveready" in its corporate title and as a brand name in the sale of lubricants, constitutes unfair competition and an infringement of the plaintiff's proprietary rights acquired by prior use and under the certificate of trade mark registration. Defense is made on the grounds that the name "Ever Ready" is descriptive and therefore the plaintiff's registration is invalid, that the

products of the respective parties are non-competing, they are essentially different in purpose and use, and are sold in different markets for distinctive purposes. Several issues are thus presented, but the controlling question is: Whether the plaintiff by its use and registration of the trade name "Ever Ready" as applied to a light lubricant sold in small packages has so pre-empted the name as to justify the Court in restraining the defendants from selling, under a similar name, heavy motor oils and greases for the use in the operation of automobiles and like machinery.

■ The Trade-Mark Act of 1905, § 16, 15 U.S.C.A. § 96, provides that the registration of a trade mark shall be prima facie evidence of the registrant's ownership of the mark, and when a similar mark is applied by others to products of "substantially the same descriptive properties," such use may be enjoined and damages may be recovered; but no mark which consists merely of words or devices which are descriptive of the goods or of the character or quality of the goods is registerable or entitled to the protection given by the Act. The purpose of the Trade-Mark Act, 15 U.S.C.A. § 81 et seq., is to aid legitimate commerce by preventing confusion of goods either as to origin or sale and this Court has jurisdiction of both technical infringement and the issue of unfair competition. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

■ The registration has established, prima facie, the plaintiff's proprietorship of the trade mark "Ever Ready", and both parties seem to agree that the obvious similarity of the defendant's mark "Eveready" brings it within the contemplation of the Act; but a consideration of the law and the circumstances presented is necessary to determine whether the terms are descriptive and whether the respective products are of substantially the same descriptive properties. A mark which is descriptive is not a good trade mark at common law (Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161), and the registration thereof does not create any substantive rights in the user, nor does he obtain any exclusive use or monopoly merely by the registration of a descriptive term (Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. ——, 39 U.S.P.Q. 296; Hygrade Food Products Corp. v. H. D. Lee Mercantile Co., D.C., 37 F.2d 900.

■ The Commissioner of Patents has granted registration of the words "ever ready" in many forms and for numerous commodities, and the approval of the term by the patent office experts creates a strong presumption of its validity as a proper trade mark under the Act (Feil v. American Serum Co., 8 Cir., 16 F.2d 88) as distinguished from a merely descriptive term. To justify a finding that the words are descriptive and the registration invalid (Warner & Co. v. Lilly & Co., supra) it must be shown that they apply especially to some ingredient, quality or characteristic of the lubricating oils under consideration. The words in question seem to have no particular reference to any ingredient or inherent characteristic or quality of oil. They suggest merely that the product is prepared, is readily available or is immediately usable, in the form of a word combination or catch phrase which, although frequently used, is no more descriptive of oil than of the scores of other commodities to which it is applied. We note also that the defendants themselves have so considered it, for they adopted and registered the name as their brand with the Pennsylvania Grade Crude Oil Association and have continuously sought to promote and protect it as a trade mark. Many other persons have used and registered the words "ever" and "ready" in various forms as trade marks, and although multiplicity of registrations may have no weight in statutory proceedings relating to registration (American Fruit Growers v. Michigan Fruit Growers, Cust. & Pat.App., 38 F.2d 696), we think that such extensive use and commercial adoption of the term indicates that it is generally accepted as a satisfactory trade identification of the products of the various users. In only one cited case has a similar term been held to be descriptive. Ex parte Rich Products Corp., 21 U.S.P.Q. 646. There the Commissioner of Patents held that the term "Evr Redy" when taken with other descriptive matter constituted the description of a special characteristic of dog food and was not registerable. However, that decision, like the decision of the Court of Appeals referred to in the Act (Section 9, 15 U.S.C.A. § 89), is not a judicial judgment. It is a mere administrative decision and instruction given for Patent Office administrative purposes (Postum Cereal Co. v. California Fig Nut Co., 272 U.S. 693, 698, 47 S.Ct. 284, 71 L.Ed. 478), and it cannot be controlling in the

face of judicial recognition of the term as a valid trade mark (American Safety Razor Corp. v. International Safety Razor Corp., 3 Cir., 34 F.2d 445). We hold that the term "Ever Ready" is not descriptive within the meaning of the Act and that the plaintiff's registration of the trade mark is valid.

The second issue as to whether the respective products are of substantially the same descriptive properties involves some comparisons between them and incidentally a discussion of the possible rights of both parties to use similar names in their respective fields. Much technical testimony was given as to the similarity and the differences between the products of the respective parties, and some with regard to their distinctive uses; but from all of the scientific evidence submitted, it is possible to present the comparisons in simple language and to briefly set forth the basis of our conclusions. The products of both parties are derived from a common source, paraffin base crude petroleum. They are produced by the same process of distillation, used for a generally similar purpose, lubrication, classed in the patent office among oils and greases, and are sold to the general public as lubricants for relatively similar uses. They differ chiefly in viscosity or the rate of pour and in specific, although possibly overlapping, use. One is designed for lubricating small or light machinery and the other for heavy, and they may not be used interchangeably. They are sold in different quantities and packages and there is little likelihood of the public being misled as to the purpose for which each product may be used. Without reviewing in detail all of the properties and characteristics, it would seem obvious that they are both essentially the same as to ingredients, both are oils intended for lubrication of machinery, and that they are of substantially the same properties as to composition, source and use. The fact that one product is used to oil a bicycle and the other an automobile is not sufficient in itself to deny their similarity so far as descriptive properties are concerned. Refineries generally produce and dispense both types of lubricant and other distillates of petroleum, and it has been properly held that they are all in the same descriptive class. Ethyl Gasoline Corp v. Klibanow, D. C., 1 F.Supp. 584. We conclude that the goods of the respective parties are of substantially the same descriptive properties and that the plaintiff is entitled to the protection of the Act, unless the defendant can establish an equitable right superior to the rights of the plaintiff. Whether defendants have such rights may be determined by an examination of the authorities defining the degree or extent of the protection afforded by the Act where two users claim concurrent rights under similar trade marks.

The earlier tendency was to confine the protection of a trade mark to the particular product and in the territory in which it was used, and it has been held that a trade mark user must be content with that special field in which he uses his mark. France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304; Pabst Brewing Co. v. Decatur Brewing Co., 7 Cir., 284 F. 110. But the general rule now seems to extend the protection of the Act to all goods of the same class even though the alleged infringement is not upon the same species of articles. This rule is established by cases holding that a trade mark protects the owner not only on an article to which he has applied it but also upon other goods such as might naturally be supposed to come from him. L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A. 1918C, 1039. And in Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 964, involving a trade mark on coats, vests and pants and used by another producer on hats and caps, the Court, Woolley, J., after approving the classification of the Commissioner of Patents, said: "But on a charge of infringement courts, advancing a step from the old law, are to-day less concerned with the species than with the class of goods on which a trade-mark has been used. When it has been used by the owner and by another on goods of the same class, though different in species, the question whether they are so closely related—so near, akin—as to be regarded as having the 'same descriptive properties' arises."

The classification or kinship of the articles on which a mark is used seems to be the more equitable basis for determining the degree of protection. This is shown by the cases holding where there is a sufficient relationship between the goods to justify an ordinary buyer in assuming from the marks that both articles are from a common source, there is an infringement. It is the confusion of origin, not necessarily the confusion of goods, which controls. Vick Chemical Co. v. Vick Medicine Co.,

D.C., 8 F.2d 49. The principle that goods in the same class or genus are entitled to the protection of a registered trade mark is confirmed in a case involving similar trade marks used by one producer on silk dress goods and by another on a waterproof fabric. The Court, Clark, J., again indicated the tendency to extend the earlier rule, stating: "We believe it is sound policy, and so law, to lean away from duplication of names in favor of a broad interpretation of the phrase 'the same descriptive properties.' The 'hard case' of the principal circumstances should not be permitted to modify that policy and that law." J. A. Livingston, Inc., v. Pocono Rubber Cloth Co., D.C., 8 F.Supp. 249, 250, affirmed 3 Cir., 79 F.2d 446.

We think it is entirely reasonable and logical to hold that a trade mark owner is entitled to the right of normal and expected expansion of his business by the introduction of related goods under the protection of the same mark. Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46. And unless the use of a trade mark by a second user is so foreign to the owners' use as to insure against any identification of the two products, it is unlawful. This principle is applicable even where the first user does not produce a competitive article (Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972) which situation prevails in the present case.

"The theory on which the wrong has been extended to include the use of the mark on goods never made or sold by the owner, is that, though the infringer's user cannot at the moment take away his customers, it may indirectly do so by tarnishing his reputation, or it may prevent him from extending his trade to the goods on which the infringer is using the mark. That would seem as much a violation of the interest which the mark serves to protect, as though it was used upon the same kind of goods as the owner sells." Hand, J., in L. E. Waterman Co. v. Gordon, supra [72 F.2d 273].

That the element of possibility of confusion has been stressed, and the protection of the Act widened, is indicated by decisions in which the adoption of a trade name for pancake flour precludes its use on syrup (Aunt Jemima Mills Co. v. Rigney & Co., supra); the name of a fountain pen may not be appropriated for razor blades (L. E. Waterman Co. v. Gordon, supra); the use of "Dunhill" on shirts con-stitutes an infringement of the brand used for smokers' supplies (Alfred Dunhill of London v. Dunhill Shirt Shop, D.C., 3 F. Supp. 487); the name of an automobile may not be used on tires (Hudson Motor Car v. Hudson Tire Co., D.C., 21 F.2d 453); the brand name used on hose may not be adopted for men's and boys' coats (R. H. Macy & Co. v. H. W. Carter & Sons, 56 App.D.C. 249, 12 F.2d 190).

Defendants have urged most strongly that their product is non-competing both as to use and also as to market, that the plaintiff has suffered no injury to his business and relief should therefore be denied. We are not unmindful of the principle now well established that an innocent second adopter of a trade name, using it in a different geographic location, where there is no actual conflict, may acquire a valid trade mark in his territory similar to that used by the first user. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S. Ct. 357, 60 L.Ed. 713; United Drug Co. v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Bisceglia Bros. Corp. v. Fruit Industries, D.C., 20 F.Supp. 564. We do not think, however, that the present defendants are such innocent users nor that the geographical locations of the respective markets are so distinct as to bring the case within that rule. Defendants had notice of the plaintiff's use and claim to the trade mark at or about the time of their entry into the field. They deliberately proceeded with the extension of their business in the face of a threatened and later an actual suit for infringement, and we see no inequity in holding that those who adopt trade marks should not enter a field where doubts can be reasonably entertained as to the likelihood of confusion. Crystal Corp. v. Manhattan Chemical Mfg. Co., Cust. & Pat.App., 75 F.2d 506. If they do so it must be at the risk of successful interference and restraint by the first user. The refusal to desist after notice of infringement might even create a presumption of fraudulent intent. Feil v. American Serum Co., 8 Cir., 16 F.2d 88; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U.S. 537, 548, 11 S.Ct. 396, 34 L.Ed. 997.

The foregoing discussion can leave little doubt that the plaintiff is entitled to injunctive relief. It acted promptly to protect its registered trade mark and has caused or suffered no such unexplained delay as would justify the denial of the protection sought. Menendez v. Holt, 128

U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. And even if a doubt existed it should be resolved against the newcomer in the plaintiff's field. B. F. Goodrich Co. v. Hockmeyer, Cust. & Pat.App., 40 F.2d 99. As to the plaintiff's claim to an accounting and damages, it would seem that the plaintiff has shown no actual damage in its business reputation or any measurable loss resulting from unfair competition.

The products of the parties were not the subject of any actual competition, in that the defendants did not produce a light machine oil, and the plaintiff's only financial loss apparently is the expense of the present litigation. We do not think that the present circumstances demand an accounting or the payment of damages other than the costs of the present suit. Where a trade mark is appropriated, injunctive relief may be granted without requiring the Court to decree an accounting and damages (Mosler & Co. v. Lurie, 2 Cir., 209 F. 364, 126 C.C.A. 290), and we feel that the granting of an injunction will adequately protect the rights of the plaintiff in the use of its trade mark and against any possible loss from unfair competition in its future business.

Both sides have presented numerous requests for findings of fact and conclusions of law. So far as the respective requests coincide with the following findings and conclusions, they are affirmed and to the extent that they differ, they are denied. We believe, however, that the following findings and conclusions cover all of the controlling circumstances and essential legal issues.

### Findings of Fact

1. Plaintiff and defendants are corporations of different states engaged in the sale of their respective products in the State of Pennsylvania and elsewhere.

2. Plaintiff produces and sells a light lubricant under the trade mark "Ever Ready" which it registered in the Patent Office in 1925 pursuant to application made in 1922.

3. The name "Ever Ready Company" was adopted and used by plaintiff, Plough, Inc., in the sale and distribution of its product.

4. The defendant, Intercity Oil Company, is a wholesale dealer in oils and petroleum products and prepared and furnished motor oils and greases distributed by its affiliate Eveready Oil Company, under the name "Eveready".

5. The defendant, Eveready Oil Company, sold, advertised and distributed "Eveready" motor oils and other petroleum products within the territory in which the plaintiff distributed its products.

6. At or about the time defendants began the use of the name "Eveready", plaintiff protested against the alleged infringement and promptly followed its protest by the institution of the present suit. Defendants, with knowledge of plaintiff's registration, declined to desist and continued to extend their business under the name, "Eveready."

7. Plaintiff's product is used for the cleaning and lubrication of light machinery and is distributed through retail mercantile establishments generally, including automobile service and supply stations.

8. Defendants' products are used for lubrication of automobiles and industrial machinery and are distributed principally through automobile service and supply stations and dealers in lubricants.

9. The products of both parties are produced from paraffin base petroleum by the process of distillation and are designed for lubrication of machinery.

10. The respective products differ essentially in viscosity or their relative rate of pour, and their respective uses are on different classes of machinery.

11. There is a likelihood of confusion as to the source of the respective products by the use of the name "Ever Ready" by the plaintiff and "Eveready" by the defendant, which likelihood is increased by the fact that refining companies generally produce and distribute an entire range of petroleum products under a single name.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the issues of infringement and unfair competition.

2. Plaintiff's registered trade mark "Ever Ready" as applies to oils and greases is valid.

3. The plaintiff's trade mark "Ever Ready" is not descriptive and is entitled to the protection afforded by the Trade Mark Act and the common law.

4. Defendants' adoption and use of the trade mark "Eveready" and their use of the term in the sale of oil and as part of the corporate distributor's name constitutes an infringement and unfair competition.

5. Defendants have not acquired any separate and individual rights to the use of the trade mark in a distinctive geographic location or market.

6. Plaintiff has not shown any special damage suffered as a result of the defendants' unlawful use of the trade mark inasmuch as the products of the respective parties were in fact non-competing.

7. Plaintiff is entitled to injunctive relief and to its costs in the present suit. A decree in accordance with the findings and conclusions herein may be submitted for entry as the order of this Court.