## UNITED SHOE MACHINERY CORPORATION v. COMPO SHOE MACHINERY CORPORATION (two cases).*

### SAME v. BRESNAHAN SHOE CO.

Patent Appeals Nos. 2879–2881.

Court of Customs and Patent Appeals.
Feb. 29, 1932.

*Rehearing denied April 11, 1932.

A. D. Salinger, of Boston, Mass. (Horace A. Dodge, of Washington, D. C., of counsel), for appellant.

Watson, Bristol, Johnson & Leavenworth, of New York City (Ellis W. Leavenworth, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This case involves three appeals from the decision of the Commissioner of Patents, the first and second of which (Nos. 2879 and 2880) are opposition proceedings in which appellant opposed, in the first opposition, the registration by appellee of the word "Compo" as a trade-mark for adhesive shoe cement used in making "Compo" shoes, and, in the second opposition, opposed the registration of the same trade-mark for a shoe cement softener.

The third appeal (No. 2881) is a cancellation proceeding brought by appellant against the Bresnahan Shoe Company, for which its assignee, Compo Shoe Machinery Corporation, had been substituted, to cancel trade-mark No. 246,755, registered September 11, 1928, for the word "Compo" as a trade-mark for boots and shoes (first use alleged February, 1928).

The three cases involve substantially the same questions, are presented in a single record, are briefed together by the parties, and will be disposed of in a single opinion by this court. All three proceedings are grounded upon the proposition that the word "Compo" is descriptive and therefore not registrable as a trade-mark. The decision of this case, in view of our conclusions, involves not only a consideration of the descriptiveness of the term "Compo," but also the sufficiency of the petition for cancellation and the notices of opposition, and the sufficiency of the proof submitted. In view of the fact that we conclude that the pleadings and proof are sufficient, we think it will be help-ful to first consider the descriptiveness of the term "Compo."

Appellee concedes that the term "Compo" was descriptive fifty years ago, but contends that such descriptive meaning of the term has "long since become obsolete and forgotten." There is no serious dispute between the parties at bar about the meaning and early use of the word "Compo." The term, as early as the 70's of the last century, when applied to shoes, was understood to mean a shoe with the sole cemented or glued to the upper. It was about a half century ago that shoe manufacturers, especially those in New England, were quite generally engaged in making shoes which they styled "Compo" shoes, and which shoes were sold and dealt in as "Compo" shoes. As early as 1877, a patent was granted by the United States Patent Office for apparatus for pressing the soles of "Compo" shoes against the uppers. In the years 1878, 1879, and 1881, other patents for napping the fibers on shoe soles of "Compo" shoes and for sole pressing machinery for "Compo" shoes and for machinery for cementing shoe uppers and soles of "Compo" shoes were applied for and granted. These patents, containing frequent mention of the term "Compo" are set out in the record.

Appellant introduced into the record letters, and extracts from trade journals, newspapers, and directories, the dates of which range from 1873 to the time of taking testimony, and all of which contain frequent references to "Compo shoes," "Compo process," "Compoing shoes," "Compo work," "Compo cement," "Compo kettle," etc. Some of such printed matter was published in the years 1873, 1879, 1897, 1914, 1923, 1924, 1927, and 1928. The record would seem to justify the conclusion that between 1873 and 1928 there were periods consisting of probably a dozen years during which the term, if used at all, was used infrequently.

The manufacture and sale of "Compo" shoes was discontinued, apparently on account of the fact that no suitable cement or suitable cementing machinery had been devised with which a shoe meeting the commercial requirements could be produced. With the advent of pyroxylin or celluloid cements, for attaching the outsole to the shoe, and the improvement in compressing machinery, interest in the "Compo" shoe was revived, and about the year 1914 a German concern, Atlas Werke, succeeded in interesting American shoe manufacturers in its machine and celluloid cement for making the "Compo" shoe. It, however, adopted as a trade-mark for its

machines, cement, and shoes, the word "Ago." For some reason, not necessary to discuss here, its venture was not very successful.

In 1928 the Bresnahan Shoe Company began the manufacture of "Compo" shoes with machinery and equipment of its own devising, and caused to be registered the word "Compo" as a trade-mark for such shoes. Shortly thereafter, it assigned its business and "Compo" trade-mark for boots and shoes to appellee, which has since that time been engaged in supplying shoe manufacturers with machinery and cement for making "Compo" shoes. The Compo Shoe Machinery Corporation does not make shoes, but deals with shoe manufacturers, granting licenses for the use of the trade-mark "Compo" on the product manufactured with their machinery and cement.

The United Shoe Machinery Corporation, appellant, is a later arrival in the same field, and supplies shoe manufacturers with machinery and cement for making "Compo" shoes.

The Examiner of Interferences in the cancellation proceeding held that the term "Compo" in the registered trade-mark was descriptive, that appellant had sufficiently alleged and proved injury, and recommended that the trade-mark be canceled. In the opposition cases he held that the notices were insufficient, since there was no allegation of use of the trade-mark by the opposer, relying upon Andrews Radio Co. v. Timmons Radio Products Corp., 1926 C. D. 39, 345 O. G. 798. On account of the insufficiency of the notices, he dismissed the opposition and adjudged that the applicant was entitled to registration.

The Commissioner of Patents affirmed the action of the Examiner of Interferences as to the opposition proceedings, but reversed his decision in the cancellation proceeding, holding that the petitioner had not alleged nor shown sufficient interest to entitle it to interfere, and the petition was dismissed, and it was adjudged that the registration should not be canceled.

 We think under the evidence in this case that the term "Compo," when applied to the shoes, shoe cement, and cement softener upon which the trade-mark was used, is descriptive of such merchandise. On this record the term never became obsolete so as to destroy its descriptive character. The mere fact that "Compo" shoes were not dealt in nor referred to by name to any great extent during a period of many years does not justify the conclusion that the term had become

obsolete when appellee adopted it as a trade-mark.

The controlling facts of the case at bar are very different from those in the case of Le Blume Import Co. v. Coty (C. C. A.) 293 F. 344 (chiefly relied upon by appellee), where the word "Lorigan" was held to be registrable as a trade-mark for perfume. "Lorigan" and "Origan" meant the same. "Origan" was the name of a rare plant. The principal base of Coty's perfume was not the essence from the origan plant, although it was claimed to be the principal basis of other perfumes. The court pointed out the equities of Coty who, unlike the appellee in the case at bar, was the originator of the term as applied to perfume, and also called attention to the suggestive rather than descriptive character of the term, and applied the doctrine of secondary meaning. The Examiner of Interferences in the cancellation proceedings at bar thoroughly considered that case and aptly distinguished it from the case at bar.

One of appellee's witnesses claimed to have "originated" the term "Compo." Upon this record it can hardly be said that he "originated" it; at most he only brought it into more extensive use. If appellee's position in this case is correct, a manufacturer of women's wearing apparel could "originate" the term "bustle" and get a monopoly upon the term, since bustles, as far as we know, are no longer used and have not been in use nor have they been often referred to in literature or conversation during the greater portion of the last half century. If appellee's contentions with respect to a trade-mark right in the word which it claims to be obsolete were approved by the courts, the problems of the Patent Office and the courts in determining what words were "obsolete and forgotten" would increase in frequency and perplexity. A trade-mark, as was held by the United States Supreme Court in Bourjois & Co. v. Katzel, 260 U. S. 689, 692, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567, carries with it a monopoly, as far as it goes, no less complete than does a patent. Such monopolistic rights must rest on foundations more secure than those upon which appellee relies.

While no one has offered any explanation as to just why the word "Compo" was first applied to shoes, it is clear, upon this record, that for half a century when the term was applied to shoes it was understood to mean shoes with cemented soles. We note, however, that the noun "Compo" is a word of the English language and is defined in the dictionary.

Appellant's witness Brown testified that he had made "Compo" shoes during a period from 1876 to 1892 and dealt in them by use of the term "Compo shoes." He recalled the names of at least eight other shoe manufacturers, located near him, who did likewise. If appellee's registered mark is a valid one, witness Brown could not again engage in the manufacture of "Compo" shoes and safely use the term "Compo" in his dealings.

For the reasons hereinbefore stated, and without further discussing the many other pertinent reasons and suggestions afforded by the record, supporting our conclusions herein, we must hold that the term "Compo" is descriptive and cannot be appropriated as a registered trade-mark.

We now proceed to a discussion and decision of the question of the sufficiency of the petition for cancellation and notices of opposition and the proof thereunder.

In the cancellation proceeding, the Examiner of Interferences held the petition to be sufficient, and convincingly and clearly pointed out the difference in the character of allegation and proof required in a case where a cancellation was sought of a descriptive term by reason of the fact that such registration was a restraint upon the use of what was publici juris, and in a case where, by reason of confusion in trade, the cancellation was sought of a mark in which both parties claimed ownership and which both parties claimed pointed to the origin of their goods.

We went into this question quite thoroughly in Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., 49 F.(2d) 482, 486, 18 C. C. P. A. 1294, and much that was said there need not be repeated here.

Sections 6 and 13 of the Trade-Mark Act of February 20, 1905 (15 USCA §§ 86, 93), under which these proceedings were instituted, provide, respectively, that any one may oppose the registration of a mark "who believes he would be damaged by the registration," and that any person may apply at any time for cancellation whenever he "shall deem himself injured by the registration of a trade-mark in the Patent Office." One is a provision for preventing a registration which would result in his damage, and the other is to cancel such a mark after it has been registered, if he deems himself injured. Obviously, both proceedings are intended to bring about the same result, in so far as each provides a method of avoiding injury flowing from the existence of a registered trade-mark, and it seems clear to us that no greater degree of interest need be alleged or proved in one of such proceedings than in the other.

The appellant here is not seeking to cancel the registered trade-mark "Compo" or to oppose the registration of the same for the purpose of determining ownership of the term or of acquiring the exclusive right to use the same, but it is seeking to prevent another from being in a position to legally claim prima facie ownership and right of exclusive use.

The statute gives *any person* who believes he would be damaged the right to oppose, and *any person* who shall deem himself injured the right to petition for cancellation. These provisions are very broad, and should be broadly construed. Of course, Congress did not mean to grant these rights to a mere intermeddler, to one who had no interest in the use of the term, and thereby authorize such a person to interfere in the affairs of others and in the business of the Patent Office. Certainly the person seeking to cancel a registration or oppose an application for registration must have a greater interest than a member of the general public who by such registration suffers no invasion of his rights and privileges. It is well understood in the application of equitable remedies that one who seeks such application is bound to show an interest in a suit personal to himself and not such an interest as he has only by virtue of being a citizen. Tyler v. Judges of the Court of Registration, 179 U. S. 405, 406, 21 S. Ct. 206, 45 L. Ed. 252; Massachusetts v. Mellon, 262 U. S. 447, 448, 43 S. Ct. 597, 67 L. Ed. 1078. We know of no reason why this rule does not apply here.

But the interest shown by the appellant here certainly is not the interest of an intermeddler or one whose rights are not vitally at stake. The petition for cancellation, filed in February, 1929, and amended in May, 1929, alleged that petitioner "will be seriously damaged by the said registered trade-mark" for reasons which it then proceeded to enumerate. It alleged that it was a corporation engaged in manufacturing, and supplying to users, shoe machinery and various findings and supplies used in the manufacture and repair of boots and shoes; that for some time past it had been engaged in the development of machinery for making "Compo" shoes with the definite plan of supplying shoe manufacturers with such machines and with the necessary cement for making such shoes; that the development of such machines had at that time been practically completed and that such a machine had already

been put to use in a shoe factory; that "other of these machines are to be manufactured by applicant immediately and put into use"; that, prior to the filing of the application for cancellation, applicant and its customers· or prospective customers had used the word "Compo" as a descriptive adjective in connection with the shoes manufactured or to be manufactured on applicant's machines; that for a great many years it had been and then was selling to shoe manufacturers various cements and adhesives used in the manufacture of boots and shoes, including cements that were capable of use in the making of "Compo" shoes, and that the applicant intended in the future to supply to the shoe manufacturers such cements and adhesives as were particularly adapted for the making of "Compo" shoes. The petition then specifies the manner in which it will be damaged by its customers refusing to use its machinery unless they can call the shoes by their right r.ame, and that it would undoubtedly be precluded from the use of the word "Compo" in connection with its machines and cement except at the risk of infringing such trademark.

The proof introduced goes further than to prove the allegations of the petition, since by the time the proof was taken much advancement had been made in placing its machines and cement upon the market.

In its notices of opposition which were filed January 8, 1929, it alleged that it believed it would be seriously damaged by the ·registration of the proposed trade-mark, and assigned, as reasons why it would be damaged, that it was a corporation engaged in the business of manufacturing, and supplying users, shoe machinery, and various findings and supplies used in the manufacture and repair of boots and shoes; that during the preceding year it had begun the development of machines for making "Compo" shoes with the definite plan of supplying shoe manufacturers such machines and the necessary cement for making·such shoes on such machines, and that, at the time of filing the application, the development of such machines was nearly completed, and that at that time it expected to put such machines in use in a shoe factory on or about February 1, 1929; that other machines were to be manufactured by the opposer and immediately put into use; that it had been for a great many years, and was then, selling to shoe manufacturers various cements and adhesives used in the manufacture of boots and shoes, including cements capable of use in the manufacture of "Compo" shoes; and that it intended to supply to shoe manu-

facturers generally machinery and cements particularly adapted· for use in connection with "Compo" shoes and in connection with machines that opposer had developed for that purpose.

The proof in the opposition proceedings and the application for cancellation was the same. Appellant showed that in the exchange of correspondence between its officers it had used the term "Compo" in connection with shoes in 1914. This, of course, was not a trade-mark use nor a use in the trade generally, but it is of value to show that, in connection with its business in which it was engaged at the time it filed its application, it was desirable to use and probably necessary to use this term in order to fully describe this particular kind ·of shoe-making machinery and the product thereof.

The proof shows that its definite plan of supplying shoe manufacturers with such machines and cement upon which it was proceeding at the time of filing the notices and petition was carried out. Not only was appellant justified in believing that it would be damaged and in deeming that it was injured by appellee's asserted monopoly of the term "Compo," but we think it has alleged and shown a state of facts where damage was certain to result to it if appellee's claimed monopoly was not successfully disputed.

Under circumstances such as are shown in this case, we think it unnecessary for the opposer or applicant for cancellation to allege and prove any use of the term complained of. It is only necessary under such circumstances to show such interest as will justify the conclusion that damage to it will ensue if the use of such term by it or its customers in describing their goods is denied. Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., supra.

This is not a case of a party who is not engaged in the "Compo" shoe machine and cement business and who only contemplates going into it in the future, and has no real interest in the business at the time of filing the application, seeking to clear the registration books of descriptive terms to which it may find objection. Those who are engaged in trade have the right to freely use, in connection with their business, terms which describe their goods, and they and their customers should not be handicapped in such use by the threat of invalid registrations, and those who are so engaged are warranted in taking advantage of their statutory right to remove such threat "at any time" when they are justified in the belief that damage

will ensue to such business by reason of its natural development and expansion being hampered.

We said in Model Brassiere Co., Inc., v. Bromley-Shepard Co., supra:

"As long as the word 'ensemble' is a registered trade-mark, it is a threat, not only against the party who manufactures and sells merchandise like that of the parties to this suit, but to all who buy of them for the purpose of resale. Its continuance as a registered trade-mark, which mark appellant urges is prima facie legal, thus has the tendency to interfere with and hamper the commerce of the country and the clearly defined rights of tradesmen. See Electro Steel Co. v. Lindenberg Steel Co., 43 App. D. C. 270, 5 T. M. R. 295.

"That appellee was not required to show use on the date the petition was filed, and that the record shows injury to appellee, and its right to petition is supported by Andrews Radio Co. v. Timmons Radio Products Corp., supra; Elishewitz v. Leyser Green Co., 47 App. D. C. 193, 8 T. M. R. 34; Hydraulic Press Brick Co. v. Hocking Valley Products Co., 120 Ms. Dec. 196, 7 T. M. R. 155; Electro Steel Co. v. Lindenberg Steel Co., supra. While we are of the opinion that the petitioner was not required to show that he used the term on the date the petition was filed, he is, of course, required to show a statement of facts from which it may be found that he was being injured at that time. He would have no right to complain about the registration of the offending mark if, at the time he filed his petition, he was not being injured by it. Elishewitz v. Leyser Green Co., supra."

In Elishewitz v. Leyser Green Co., 47 App. D. C. 193, 194, the Court of Appeals of the District of Columbia approved the finding of the Assistant Commissioner with reference to a descriptive trade-mark, in which the Commissioner used the following language: "The petitioner for cancelation shows injury by the registration, though injury will be presumed to follow the improper registration of any descriptive word."

While we have not had the exact questions before us that were before the Commissioner of Patents in the Elishewitz Case, supra, and in Marinello v. Plough Chemical Co., 151 Ms. Dec. 311, 16 Trade Mark Rep. 542, and Fleischmann Co. v. Anderson, 140 Ms. Dec. 488, 12 Trade Mark Rep. 474, and have not found it necessary to pass upon the same state of facts as were therein involved, we think these decisions are predicated upon a correct view of the law on the question now before us.

In the Marinello Case, supra, it was held: "Nor is it necessary, in opposing the registration of a descriptive mark, to show use of the mark; it is sufficient that the opposer is a dealer in the goods described by the mark as injury will be presumed to follow the improper registration of any descriptive word. (Fleischmann Co. v. Anderson, 140 Ms. Dec. 488 [12 T. M. R. 474].) Clearly the opposer is a dealer in the goods described by the applicant's mark."

In the Fleischmann Co. Case, supra, it was said: "Since this is a descriptive mark, a dealer in goods properly described by the mark may oppose. 'Injury will be presumed to follow the improper registration of any descriptive word.'"

Furthermore, the statement of facts contained in this record we think makes the rule laid down in Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581, applicable here. It was there said: "No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself."

For the foregoing reasons we conclude that the trade-mark sought to be canceled and the mark sought to be registered are descriptive of the goods upon which they were to be used, and that the appellant in its cancellation and opposition proceedings has sufficiently alleged and abundantly proved the elements of damage contemplated by the statute, and that it is a proper party in interest.

The decisions of the Commissioner of Patents in the opposition proceedings, dismissing the oppositions and adjudging the applicant entitled to registration, are reversed, and his decision in the cancellation proceeding, reversing the decision of the Examiner of Interferences and adjudging that the registration of appellee should not be canceled, is reversed.

Reversed.