646

## CRIDLEBAUGH v. MONTGOMERY WARD & CO., Inc.

**Patent Appeal No. 5220.**

Court of Customs and Patent Appeals.
Dec. 9, 1946.

Charles R. Allen, of Washington, D. C., for appellant.

F. P. Keiper, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

J. Clayton Cridlebaugh, doing business as Marvel Co., has here appealed from a decision of the Commissioner of Patents, 64 USPQ 513, affirming the action of the Examiner of Trade-Mark Interference in sustaining the petition of Montgomery Ward & Co., Inc., for the cancellation of appellant's mark. The appellant will be hereinafter referred to as Cridlebaugh and the appellee as Ward.

The trade-mark in controversy, "HEN SPECS," (printed generally throughout the record as "Hen Specs"), was by Cridlebaugh registered in the United States Patent Office on July 2, 1940.

The petition for cancellation, sustained by the Patent Office tribunals as aforesaid, is based, for the most part, upon the premise that the term "Hen Specs" is either descriptive or misdescriptive of Cridlebaugh's goods.

The mark "Hen Specs" is by Cridlebaugh applied to a metal device, called an "anti-picking device," to be fastened on the beak of a chicken in such fashion as to present the appearance of the bird wearing spectacles, although Cridlebaugh's device is all solid metal material and completely obstructs the forward vision of the fowl. It is mounted on the fowl's beak by a pin passing through the breather openings of the bird. The portions of the device which obstruct the vision immediately in front of the eyes simulate in shape the two vision portions of a pair of spectacles, and the portion fitting over the beak is rounded as is the intermediate or nose portion of a pair of spectacles.

Fig. 1 below is the drawing of Cridlebaugh's patented device to prevent picking

in poultry (being Fig. 3 of patent No. 2,079,107), and Fig. 2 is Maurice L. Rudolph's patented device for preventing pick-outs (being Fig. 2 of patent No. 2,181,070). Rudolph's device is the one that was at one time exclusively advertised and sold by Montgomery Ward. These drawings are supplied for the purpose of illustrating the appearance of the articles as related to the issue of the mark "Hen Specs" being descriptive of the character or quality of the articles involved:

FIG. 1

FIG. 2

In support of Ward's petition for cancellation there are many allegations containing interesting facts, most of which we need not consider here. The record discloses much litigation and controversy between the parties hereto concerning the use of the terms "Specs" and "Spectacles" by both parties hereto, and the use of the term "Goggles" by Ward in selling its article which is quite comparable to that of Cridlebaugh. It is shown in the record that during a portion of the period of controversy and up until a comparatively recent date Ward sold and advertised an anti-picking device for chickens almost identical in shape with that of Cridlebaugh's article except that the so-called blinders contained two openings of transparent red material, which afforded vision to the fowl immediately in front but which, owing to the red color, made it impossible

for the chicken to observe blood or red-colored flesh on the other fowls.

Such issues as estoppel and res judicata are raised here, but in view of our conclusion it is only necessary for us to consider the sole question of the descriptiveness of the mark, which consideration forms the basis of the decisions of the Patent Office tribunals.

Cridlebaugh urges that his mark is not descriptive but is merely suggestive; that this is true by reason of the fact that his device does not aid the vision of the chicken but obstructs it, and that the transparent colored glasses of Ward do not aid vision because the glasses become dirty and consequently opaque.

In section 5 of the Trade-Mark Act of February 20, 1905, 15 U.S.C., 1940 Ed., § 85, 15 U.S.C.A. § 85, it is provided that no mark shall be registered which consists "merely in words or devices which are descriptive of the goods with which they are used, *or of the character or quality of such goods.*" [Italics not quoted.] Section 13 of said Act, 15 U.S.C., 1940 Ed., § 93, 15 U.S.C.A. § 93, provides that "whenever any person shall deem himself injured by the registration of a trade-mark in the Patent Office he may at any time apply to the Commissioner of Patents to cancel the registration thereof."

■ In order for a mark to be merely descriptive of the character or quality of goods it is not necessary that it should be descriptive of every characteristic and quality of such goods. "Hen Specs" is clearly descriptive of the form and appearance of Cridlebaugh's article, and this certainly is a characteristic. Being placed in front of the eyes of the chicken it has an effect upon vision, and it is immaterial that it is not the same effect as characterizes most spectacles (although it frequently occurs that one glass of a pair of spectacles is not transparent).

■ Moreover, as was pointed out by the examiner, the term "Hen Specs" is truly descriptive of Ward's goods and the registration of Cridlebaugh presumptively entitles the latter to the exclusive use of

the term. The examiner on this phase of the question said:

"Even aside from this narrow question, the examiner is of the opinion that the notation is descriptive of other forms of the goods and, likewise, for this reason is unregistrable. (Ex parte American Chain Company, Incorporated, 259 O.G. 777, 1919 C.D. 20; In re Hair Net Packers, Inc., 524 O.G. 265, 28 C.C.P.A. 715, 115 F.2d 254.)"

The same view was taken by the commissioner and other decisions as equally pertinent as those cited by the examiner were cited in the commissioner's decision.

Even if it could be concluded that the term is misdescriptive of Cridlebaugh's device, he has no right to assert exclusive monopoly upon a descriptive term which describes the goods of others or which might fittingly be used by others in advertising and carrying out their business. See Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., 49 F.2d 482, 18 C.C.P.A. (Patents) 1294.

As to the descriptiveness of the mark, we are in entire accord with the holding of the Circuit Court of Appeals, Third Circuit, in a case involving Cridlebaugh and the inventor and manufacturer of the devices advertised and sold by Ward, Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, 801. Cridlebaugh had sued Rudolph for infringement of the "Hen Specs" trademark; the suit involved other issues not important here. The court held the mark invalid on account of its descriptive character and said:

"In this case the word 'Specs' is but a figurative description of the plaintiff's articles of manufacture and does not grow out of either the origin or ownership of the goods. The designation therefore, does not entitle the plaintiff to the exclusive use of the word or its synonyms".

In Re Hair Net Packers, Inc., 115 F.2d 254, 256, 28 C.C.P.A. (Patents) 715, cited by the examiner, this court had before it a trade-mark application for registration of the word "Professional" as a trade-mark for hair curlers, hair pins, etc. It was argued there that the word was not descriptive because hairdressing was not a profession and that appellant's goods, for the most part, were not used by professionals. There we said:

"The contention that appellant's goods are for the most part used by those who are not professionals is unavailing. This court and other courts have frequently held that as to registrability, it does not help the situation for a trade-mark to be misdescriptive rather than descriptive. This is the view which was entertained by the trade-mark examiner when he stated that a mark was to be regarded as descriptive when it 'describes the like goods of others'. This court in a number of cases has held to the same effect. It will be sufficient to cite this court's decision in the case of In re Bonide Chemical Co., Inc., 46 F.2d 703, 705, 707, 18 C.C.P.A. (Patents) 909, which involved the registrability of the term 'Crow-Tox' applied to a preparation used in protecting seeds against birds and animals."

In the "Crow-Tox" case, if "Crow-Tox" did not describe a characteristic of appellant's preparation it would fittingly describe that of others that would contain poison and was therefore a descriptive term that was not registrable.

The decision of the commissioner, for the reasons stated, is affirmed.

Affirmed.