35 C.C.P.A.(Patents)

## ANDREW J. McPARTLAND, Inc., v. MONTGOMERY WARD & CO., Inc.

### Patent Appeal No. 5304.

Court of Customs and Patent Appeals.

Nov. 29, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City (Clarence M. Fisher, of Washington, D. C., and George E. Middleton, of New York City, of counsel), for appellant.

Henry R. Marshall, of Chicago, Ill., for appellee.

W. W. Cochran, of Washington, D. C. (Walter J. Derenberg, of Washington, D. C., of counsel), for the Commissioner of Patents, amicus curiae.

Sylvester J. Liddy, of New York City, for Lawyers' Advisory Committee of United States Trade Mark Association, amicus curiae.

Charles R. Allen, of Washington, D. C., for American Patent Law Association, amicus curiae.

Philip T. Dalsimer and A. S. Greenberg, both of New York City, for Trade Mark Committee of New York Patent Law Association, amicus curiae.

Condor C. Henry, formerly Assistant Commissioner of Patents, amicus curiae.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark cancelation proceeding from the decision of the Commissioner of Patents, 67 U.S.P.Q. 240, affirming the decision of the Examiner of Interferences sustaining appellee's petition for the cancelation of appellant's registered trade-mark "Kwixtart" for use on electric storage batteries.

Appellant's mark, registration No. 326,-257, was registered July 23, 1935, under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., on an application filed March 8, 1935.

Appellee's petition for cancelation of appellant's registered trade-mark was filed March 22, 1944.

It was claimed in the petition for cancelation that appellant's mark was descriptive of its goods and that it was, therefore, not registerable under section 5 of the Trade-Mark Act of February 20, 1905, which provides, among other things, that trade-marks which are " * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character of quality of such goods, * * *" shall not be registered.

It appears from the record, including collective exhibit No. 26, that appellee, in describing its electric storage batteries over a number of years, used the following terms in its catalogues:

Fall-winter 1933–34, "quick starting."

Spring-summer 1935, "quicker starting."

Fall-winter 1935–36, "quicker starts" and "quick, sure start."

Spring-summer 1936, "quicker starts."

Fall-winter 1937–38, "quick starts."

Spring-summer 1938, "quick starts."

Spring-summer 1939, "quicker starts" and "quick starts."

Spring-summer 1940, "quick, sure starts" and "quicker starts."

Fall Bargain Book 1940, "Quick Sure Starting."

Christmas catalogue 1940, "quick, sure starts."

Spring-summer 1941, "quick start" phonetically spelled "Kwik Start."

Fall-winter 1941–42, and Spring-summer 1942, there is displayed a battery with the letters "Kwik Start" thereon.

Mid-summer 1942, "quick starts."

Fall-winter 1942–43, "M W Kwik Start."

In addition to the evidence hereinbefore referred to, counsel for appellee introduced in evidence advertisements of other manufacturers of electric storage batteries, including the Willard Storage Battery Company, in which the term "Quick Starts" and other words of similar import were used, prior to and subsequent to appellant's alleged first use of its mark, to describe the function or quality of the batteries sold by them. The purpose of the introduction of that evidence was to establish that the term "quick start" was a common, ordinary, descriptive term which was used in the trade to describe the character or quality of electric storage batteries. It is unnecessary that we state here in detail all of the evidence of that character.

It is further argued by counsel for appellee, and so held by the decisions of the Patent Office tribunals, and properly so, we think, that the term "Kwixtart" is but a phonetic spelling of the term "quick start" and was intended to describe merely that appellant's battery would start a motor or engine quickly.

The Examiner of Interferences, as did the Commissioner of Patents, relied to a considerable extent upon the case of Model Brassiere Co., Inc., v. Bromley-Sheppard Co., Inc., 49 F.2d 482, 484, 18 C.C.P.A. Patents, 1294. In that case the registered mark "Ensemble" was use on "garter-brassieres." It also appeared, as stated in the decision of this court, that the term "ensemble" "was commonly used by merchants and others to describe combination garments prior to, and since, appellant first used 'ensemble' as a trade-mark" and in support of that statement the court referred to certain publications not published by appellee. The purpose of directing attention to those publications was to show that the term was generally understood to describe the goods or the character of such goods. It was there held that one who deemed himself injured by the registration of a descriptive mark might properly bring a petition for cancelation thereof.

We further stated in that decision "That appellee was not required to show use [of the word 'ensemble'] on the date the petition was filed" and, accordingly, held that a merely descriptive term was not registerable under the Trade-Mark Act of February 20, 1905. (Italics not quoted.) See also the decisions in the cases of United Shoe Machinery Corp. v. Compo Shoe Machinery Corp., 56 F.2d 292, 19 C.C.P.A., Patents, 1009, and Cridlebaugh v. Montgomery Ward & Co., 158 F.2d 646, 34 C.C.P.A., Patents, 742.

█ In the instant case it clearly appears that appellee and others were using words to describe their electric storage batteries which were similar to and the equivalent of

appellant's registered mark. Accordingly, so far as the Trade-Mark Act of February 20, 1905, is concerned, it is apparent that the trade-mark "Kwixtart" is merely descriptive of the goods on which it is used or of the character or quality of such goods and, therefore, was not entitled to registration.

Furthermore, it appears from the record that in appellant's registration it was stated that "No claim is made to the individual syllables of the mark, each apart from the other." That statement amounts to saying that the mark as a whole is merely descriptive of the goods upon which it was used. A somewhat similar situation is presented in the case of In re Midy Laboratories, Inc., 104 F.2d 617, 26 C.C.P.A., Patents, 1294, where it was held, in substance, that although a part of the mark might be disclaimed for registration purposes, the entire mark could not be properly disclaimed as descriptive for that purpose. The gist of the decision in that case is that such a mark is merely descriptive and, therefore, is not registrable. We have mentioned this particular phase of the case solely for the purpose of pointing out that appellant, at the time of the registration of the mark, was of opinion that the mark as a whole was merely descriptive of the goods or of the character or quality of the goods on which it was used. Each of the tribunals of the Patent Office referred to that particular fact, as well as to other facts hereinbefore stated, and properly concluded that the mark was merely descriptive of the goods on which it was used and, therefore, was not entitled to be registered under the Trade-Mark Act of February 20, 1905.

At the time of the oral arguments in this case, it was intimated from the bench that there was a possibility that the Trade-Mark Act of July 5, 1946, effective July 5, 1947, Chap. 540, 60 Stat. 427 et seq., 15 U.S.C.A. § 1051 et seq., might have application to the issues here involved. In view of the importance of that question to the members of the bar, the court was of opinion that it would be advisable to request briefs on that question, not only from counsel in the case, but also from others who might be interested. In accordance with that suggestion, supplemental briefs have been filed by counsel for the parties. Briefs of amici curiae have also been filed by W. W. Cochran, Solicitor of the Patent Office, and Walter J. Derenberg, on behalf of the Commissioner of Patents; Sylvester J. Liddy for the Lawyers' Advisory Committee of the United States Trade-Mark Association; Charles R. Allen for the American Patent Law Association; Philip T. Dalsimer and A. S. Greenberg for the Trade-Mark Committee of the New York Patent Law Association; and Conder C. Henry, formerly Assistant Commissioner of Patents. The court wishes to acknowledge with appreciation those additional briefs which have been fully and carefully considered in the disposition of the issues here presented.

Although each of the parties is of opinion that the Trade-Mark Act of July 5, 1946, effective July 5, 1947, has application to the issues here involved, they disagree as to the interpretation to be placed on section 2(e) of that act. Counsel for appellant argues that section 2(e) should be interpreted as meaning that the Congress intended to change the law as it existed in section 5 of the Trade-Mark Act of February 20, 1905, which reads in part that trade-marks which are "merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, * *" shall not be registered.

Counsel for appellee insists that Congress, by the provision in section 2(e) of the new Trade-Mark Act effective July 5, 1947, which is in accordance with the common law of trade-marks as announced by the Supreme Court, did not intend to change the meaning of the quoted provision in the Trade-Mark Act of February 20, 1905; furthermore, that the term "merely descriptive" contained in section 2(e) of the Trade-Mark Act effective July 5, 1947, being consistent with the common law, has not changed the meaning of the quoted language in section 5 of the Trade-Mark Act of February 20, 1905.

Each of those who filed briefs as amicus curiae is of opinion that the Trade-Mark Act of July 5, 1946, effective July 5, 1947, has no application to the issues here at bar, and that it was not the intent of the Congress to change the meaning of the lan-

guage of quoted section 5 of the Trade-Mark Act of February 20, 1905.

Section 13 of the Trade-Mark Act of February 20, 1905, U.S.C., title 15, sec. 93, 15 U.S.C.A. § 93, provides "That whenever any person shall deem himself injured by the registration of a trade-mark in the Patent Office he may *at any time* apply to the Commissioner of Patents to cancel the registration thereof" and that "If it appear after a hearing before the examiner that the registrant was not entitled to the use of the mark at the date of his application for registration thereof, * * * the commissioner shall cancel the registration." (Italics ours.)

Section 1 of the Trade-Mark Act of July 5, 1946, effective July 5, 1947, provides, among other things (a) (1) that a technical trade-mark shall be placed upon a *principal register* in the Patent Office.

Section 2(e) of that act provides that such marks which may be placed upon the principal register in the Patent Office shall not be "merely descriptive or deceptively misdescriptive" of the goods on which they are used.

Section 14 of the Trade-Mark Act effective July 5, 1947, provides that

"Any person who believes that he is or will be damaged by the registration of a mark on the *principal register established by this Act, or under the Act of March 3, 1881, or the Act of February 20, 1905,* may upon the payment of the prescribed fee, apply to cancel said registration—

"(a) Within five years from the date of the registration of the mark under this Act; or

"(b) Within five years from the date of the publication under section 12(c) [hereof] of a mark registered under the Act of March 3, 1881, or the Act of February 20, 1905; * * *" (italics ours)

or if (c) "at any time" a registered mark obtained under the act of March 3, 1881, 21 Stat. 502, or under the act of February 20, 1905, " * * * was obtained fraudulently or contrary to the provisions of section 4 or of subsections (a), (b), or (c) of section 2 of this Act for a registration [hereunder], or contrary to similar prohibi-

tory provisions of said prior Acts for a registration thereunder * * *."

It will be observed that subsection (e) relating to descriptive marks is not referred to in subsection (c) of section 14 of that act. Furthermore, section 4 has no application to the issue here involved.

As hereinbefore noted, section 2(e) prohibits the registration of a mark which is "merely descriptive or deceptively misdescriptive" of the goods on which it is used.

Section 12(c) of that act provides that

"A registrant of a mark registered under the provisions of the Act of March 3, 1881, or the Act of February 20, 1905, *may, at any time prior to the expiration of the registration thereof, upon the payment of the prescribed fee file with the Commissioner an affidavit setting forth those goods stated in the registration on which said mark is in use in commerce and that the registrant claims the benefits of this Act for said mark. The Commissioner shall publish notice thereof with a reproduction of said mark in the Official Gazette, and notify the registrant of such publication and of the requirement for the affidavit of use or nonuse as provided for in subsection (b) of section 8 of this Act. This subsection shall not be subject to the provisions of section 13 of this Act."* (Italics ours.)

It may be observed in passing that the Trade-Mark Act effective July 5, 1947, provides for a *principal register,* as well as a *supplemental register.* It is the *principal register* with which we are here concerned. The act further provides that the registration of a mark on the principal register " * * * shall be constructive notice of the registrant's claim of ownership thereof." § 22. The act of February 20, 1905, does not provide for a "principal register."

Section 46(a) of the Trade-Mark Act effective July 5, 1947, provides that "This Act shall be in force and take effect one year from its enactment, *but except as otherwise herein specifically provided shall not affect any suit, proceeding, or appeal then pending."*

Section 46(b) provides that

"Registrations now existing under the Act of March 3, 1881, or the Act of Feb-

ruary 20, 1905, *shall continue in full force and effect for the unexpired terms thereof and may be renewed under the provisions of section 9 of this Act.* Such registrations and the renewals thereof shall be subject to and shall be entitled to the benefits of the provisions of this Act to the same extent and with the same force and effect as though registered on the principal register established by this Act except as limited in sections 8, 12, 14, and 15 of this Act. Marks registered under the 'ten-year proviso' of section 5 of the Act of February 20, 1905, as amended, shall be deemed to have become distinctive of the registrant's goods in commerce under paragraph (f) of section 2 of this Act and may be renewed under section 9 hereof as marks coming within said paragraph." (Italics ours.)   15 U. S.C.A. § 1051 note.

It will be observed that the registration under the new Trade-Mark Act effective July 5, 1947, provides that the registrations under that act "shall be subject to and shall be entitled to the benefits of the provisions of this Act to the same extent and with the same force and effect as though registered on the principal register established by this Act *except as limited in sections 8, 12, 14, and 15 of this Act.*" (Italics ours.)

Section 47 (a) of that act provides that

"All applications for registration pending in the ·Patent Office *at the effective date of this Act may be amended, if practicable, to bring them under the provisions of this Act.* The prosecution of such applications so amended and the grant of registrations thereon shall be proceeded with in accordance with the provisions of this Act. *If such amendments are not made, the prosecution of said applications shall be proceeded with and registrations thereon granted in accordance with the Acts under which said applications were filed, and said Acts are hereby continued in force to this extent and for this purpose only, notwithstanding the foregoing general repeal thereof.*" (Italics ours.)

Section 47(b) provides that

"In any case in which an appeal is pending before the United States Court of Customs and Patent Appeals or any United States Circuit Court of Appeals or the United States Court of Appeals for the District ·of Columbia or the United States Supreme Court at the effective date of this act, the court, *if it be of the opinion that the provisions of this Act are applicable to the subject matter of the appeal,* may apply such provision or may remand the case to the Commissioner or to the district court for the taking of additional evidence or a new trial or for reconsideration of the decision on the record as made, as the appellate court may deem proper." (Italics ours.)

Section 49 of that act provides that

"*Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith prior to the effective date of this Act.*" (Italics ours.)

Section 19 of that act provides that

"In all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied. The provisions of this section shall also govern proceedings heretofore begun in the Patent Office and not finally determined."

It is apparent from the quoted excerpts of the Trade-Mark Act of July 5, 1946, effective July 5, 1947, that it provides for a "principal register" which was not provided for in any previous act; that if an *applicant* for registration desires to come within the provisions of that act, he may amend his application "if practicable" to bring his application within the provisions of that act. It is also evident from the quoted excerpts from the Trade-Mark Act effective July 5, 1947, that it was not the intent of the Congress to make that act retroactive and repeal all of the remedial provisions provided in the Trade-Mark Act of February 20, 1905. The act certainly applies to applications under the new act and to those which have been amended "when practicable" and to "equitable principles" set forth in section 19 of that act, such as laches, estoppel, and acquiescence. Those issues, however, are not presented in this appeal.

It is evident, we think, from the quoted excerpts from the Trade-Mark Act effective July 5, 1947, that that act has no ap-

plication to the issue of descriptiveness of appellant's trade-mark here involved, although the appeal in the case was pending in this court on the effective date of the passage of that act, and that, as appellant's mark is merely descriptive of the quality and character of its goods, it was not entitled to registration under the Trade-Mark Act of February 20, 1905.

■ Should we, however, be wrong in our conclusion as to the applicability to the issues here involved of the Trade-Mark Act effective July 5, 1947, we are of opinion, for the reasons hereinafter stated, that it was not the purpose of the Congress, by the language contained in section 2(e) of the Trade-Mark Act effective July 5, 1947, hereinbefore quoted, to provide for the registration of trade-marks which are merely descriptive of the character or quality of the goods upon which they are used.

As stated by the Supreme Court in the Case of Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 543, 40 S. Ct. 414, 416, 64 L.Ed. 705:

"It was settled long prior to the Trade-Mark Registration Act that the law would not secure to any person the exclusive use of a trade-mark consisting merely of words descriptive of the qualities, ingredients, or characteristics of an article of trade; this for the reason that the function of a trade-mark is to point distinctively, either by its own meaning or by association, to the origin or ownership of the wares to which it is applied, and words merely descriptive of qualities, ingredients, or characteristics, when used alone, do not do this. Other like goods, equal to them in all respects, may be manufactured or dealt in by others, who, with equal truth, may use, and must be left free to use, the same language of description in placing their goods before the public."

In support of that statement, the Court cited the following cases: Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 322, 323, 324, 20 L.Ed. 581; Amoskeag Manufacturing Co. v. Trainer, 101 U.S. 51, 54, 25 L.Ed. 993; Manhattan Medicine Co. v. Wood, 108 U.S. 218, 222, 2 S.Ct. 436, 27 L.Ed. 706; Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S.

598, 9 S.Ct. 166, 32 L.Ed. 535; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U.S. 537, 547, 11 S.Ct. 396, 34 L.Ed. 997; Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S. Ct. 625, 35 L.Ed. 247; Elgin National Watch Co. v. Illinois Watch-Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L. Ed. 536.

The earliest case on the subject cited by the Supreme Court is Delaware & Hudson Canal Co. v. Clark, supra, decided in December 1871. The law as there stated and as reiterated in the Beckwith case, supra, has not been overruled.

The Congress certainly did not intend to permit the registration of a trade-mark, which was merely descriptive of the quality or character of the goods upon which it was used, as such legislation would be diametrically opposed to the law of trade-marks as announced in the Beckwith case, supra.

We are of opinion, therefore, that by the quoted language contained in section 2(e) of the Trade-Mark Act of July 5, 1946, effective July 5, 1947, it was the purpose of the Congress to permit the registration of such marks only, so far as descriptiveness is concerned, which were not merely descriptive of the goods upon which they were used or the quality or character of such goods.

For the reasons hereinbefore stated, we are of opinion that the Commissioner of Patents reached the right conclusion.

The decision of the Commissioner of Patents is, accordingly, affirmed.

Affirmed.

BLAND, Associate Judge (specially concurring).

I agree with the holding of the court that "Kwixtart" is descriptive within the prohibition of either the 1905 act or the 1946 act.

I also agree that Congress, by the omission of the words, "or of the character or quality of such goods," did not intend to change the meaning which had heretofore been given to the language of the 1905 act with reference to descriptiveness.

Therefore I agree that the mark should be canceled. This holding would have decided all the issues necessary to decide, and, in my judgment, the question as to the applicability of the 1946 act is obiter. I think the court, in view of the probability of similar questions being raised frequently in the future, should be unwilling to pass upon this question until it is absolutely necessary.

Therefore I do not wish to express or intimate any view as to whether or not the new act applies in respects with which we are here concerned or in other respects.