57 CCPA

**MIDLAND COOPERATIVES, INC.,**
Appellant,

v.

**MIDLAND INTERNATIONAL CORPORATION, Appellee.**

Patent Appeal No. 8261.

United States Court of Customs and Patent Appeals.

Feb. 26, 1970.

Ira Milton Jones, Milwaukee, Wis., attorney of record, for appellant.

Thomas E. Scofield, Kansas City, Mo., for appellee; Claude W. Lowe, Carter H. Kokjer, Scofield, Kokjer, Scofield & Lowe, Kansas City, Mo., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board dismissing a trademark opposition proceeding.

M i d l a n d International Corporation (hereinafter International) filed application to register "MIDLAND" for electric meters, alleging use since August 15, 1962.

Midland Cooperatives, Inc. (hereinafter Cooperatives) opposed registration on the ground of prior use of the term MIDLAND, both as a trademark and as a trade name for various electrical devices, gauges, thermometers, meters, battery testers, and tools of various types and kinds, including screw drivers, nut drivers, wrenches, pliers, drills, levels and vises, hardware, appliances, petroleum products, paints, agricultural products, such as seeds, fertilizers and the like, and automotive products of various kinds, contending that confusion in trade would be likely to occur. In its notice of opposition, Cooperatives asserted ownership of a registration covering its mark.[1]

The notice of opposition was filed on September 15, 1964. International's answer, filed November 2, 1964, admitted Cooperatives' ownership of the trademark alleged in the notice of opposition, asserting, however, that the said registration on its face is for goods totally foreign and commercially unrelated to the electric meters set forth in the opposed application in that the goods consisted of petroleum products such as gasoline, kerosene, fuel oil, hydrocarbon lubricants, oils and greases. It is pertinent to further point out that International's answer to the notice of opposition denied that Cooperatives had ever manufactured, sold or distributed electric meters or any commercially related goods under the trademark or trade name MIDLAND; that it had built up any good will in the mark with respect to such goods; that it sells any goods that are in competition with International's electric meters or any goods that move through the same trade channels to the same class of customers as its electric meters; that any confusion in trade is likely to result from its use of the said trademark for electric meters and that Cooperatives would be damaged by registration of the mark to International for the goods set forth in its opposed application.

Within a week after filing its notice of opposition, Cooperatives instituted a civil action against International in the United States District Court for the Western District of Missouri,[2] alleging trademark infringement and unfair competition and alleging irreparable loss and

---

1. Reg. No. 603,607 issued March 15, 1955 (for various petroleum products).

2. Midland Cooperatives, Inc. v. Midland International Corporation, No. 15184–1.

injury. In its prayer for relief, Cooperatives sought to enjoin International from making any further use whatever of MIDLAND either as a trademark for any of its products or as a part of its trade name. The prayer for relief embraced damages and sought such other and further relief "as the Court may deem meet and just."

On November 9, 1964 Cooperatives filed a copy of its complaint with the Trademark Trial and Appeal Board with its motion to suspend proceedings therein pending resolution of the issues before the District Court, stating that "it will be apparent that a decision favorable to plaintiff in said action will be dispositive of the issues of the opposition." Accordingly, the motion to suspend was granted by a member of the Trademark Trial and Appeal Board, stating that "[i]t is inferred that the outcome of said civil suit will be determinative of the issues involved in the instant proceeding."

Upon hearing of the civil action on its merits, the District Court resolved all issues in favor of the defendant International, entering on February 20, 1967 final judgment from which no appeal was taken. Thereupon proceedings in the instant opposition were resumed upon request of Cooperatives, the opposer, before the Trademark Trial and Appeal Board, at which time the board placed Cooperatives under order:

* * * to show cause why the instant proceeding should not be dismissed as involving issues which have already been fully determined in favor of applicant by the District Court in said civil action.

Upon resumption of proceedings before the board under the show cause order, Cooperatives contended that the decision of the District Court merely established International's right to use MIDLAND in commerce upon its goods but that it in no way established its right to register the mark. International countered that the issues raised in the notice of opposition were submitted in almost identical language in the complaint filed by Coop-

eratives in the civil action, and that upon the principle of res judicata Cooperatives is estopped from asserting that it would be damaged by International's registration of the mark.

In response to this issue, the board stated and held:

While * * * the question of applicant's right to register "MIDLAND" in the United States Patent Office was not before the court in the civil action and no ruling thereon was therefore made by it, the question of likelihood of confusion in respect to applicant's use of said mark on electric meters and opposer's use thereof on the goods recited in its notice of opposition was fully explored by the court, it being held that the simultaneous use by the parties of the mark on the specified goods would not be likely to cause confusion in trade.

In view thereof, it is concluded that opposer is estopped from asserting in this proceeding that it would be damaged by reason of applicant's registration of the mark "MIDLAND" on the goods specified in its application. [Citations omitted.]

It is thus apparent that the decision of the board was based on its construction of the issues raised and foreclosed by final determination in the civil action. This requires that we examine those issues.

In language almost identical to that employed in the notice of opposition, the complaint filed by Cooperatives in the civil action alleged:

Plaintiff is engaged in the sale and distribution under the trademark and trade name "MIDLAND" of various electrical devices, including, inter alia, gauges, thermometers, meters, dry and wet cell batteries, and battery testers; tools of all types and kinds, [etc.] * * *.

As did the notice of opposition, the complaint alleged large expenditures for advertising and promotion, stating that:

As a result of the plaintiff's efforts and expenditures, plaintiff has ac-

quired for its trademark and trade name "MIDLAND" a valuable and extensive good will as designating goods selected, distributed, sold, serviced and guaranteed by plaintiff.

The complaint further alleged that International, the defendant

*   *   * sells and distributes *electrical and electronic goods, devices and appliances*, tools and sporting goods under the trademark "MIDLAND" and uses the term "MIDLAND" as a prominent portion of its business name and style. *The goods which defendant sells under the "MIDLAND" mark are in substantial part similar to and directly competitive with goods which plaintiff sells under its "MIDLAND" trademark and trade name and are, on the whole, of such nature that they might reasonably be supposed to emanate from or be sold by plaintiff when sold under a mark confusingly similar to plaintiff's "MIDLAND" mark.* [Emphasis supplied.]

The complaint alleged that International used the trademark MIDAND for the "purpose of confusing and deceiving the purchasing public and trading upon plaintiff's valuable and extensive good will" whereby it had sustained irreparable loss and injury for which damages were sought and "such other and further relief as the Court may deem meet and just." Suffice it to say that the injunction sought by Cooperatives was broad and sweeping. If granted, it would have perpetually enjoined International "from using *in any manner whatsoever* the trademark and trade name 'MIDLAND' *   *   *." (Emphasis supplied.)

Upon the pleadings after trial and consideration of the evidence adduced by the parties, the issues were determined in favor of International and against Cooperatives, and final judgment duly entered. In essence the findings of the District Court, material here, as set forth in its "Memorandum and Order" are as follows:

All of defendant's advertising features the MIDLAND name and de-

fendant has used the MIDLAND mark on substantially all of its products since August, 1962.

The court further found that:

Most types of merchandise in the plaintiff's line are not sold by defendant, such as baked goods, *petroleum products*, LP gas, fertilizer, seeds and feeds, building materials and supplies, farm, home and yard equipment and supplies, and electrical household and farm appliances. *Similarly, most of the items in defendant's line of specialized electrical equipment merchandise have no counterpart in plaintiff's line of merchandise,* such as microphones, microphone cartridges, microphone sound source mixers, transmitting and receiving crystals for radio use, field strength meters, test oscillators and signal tracers for electronic service work, oscilloscopes, vacuum tube volt meters, multimeters and panel meters for electronic applications and servicings, UHF converters and remote control units for television receivers, telephone amplifiers, hi-fi components, loud speakers and earphones. [Emphasis supplied.]

The court further observed and found:

No evidence was adduced on which this Court could predicate a finding that confusion, mistake or deception did in fact result from defendant's use of MIDLAND. Nor can this Court make such a finding or a finding that such confusion, mistake, or deception is reasonably likely to occur without some factual basis in the record upon which such findings could be based.

*   *   *   *   *   *

Under the facts presented, it cannot fairly be said that the term "MIDLAND" has acquired any significant meaning as to plaintiff in commercial fields other than petroleum distribution.

The basic and controlling issue here, as we see it, is whether the board properly dismissed the opposition on the grounds of estoppel within the ambit of

principles involving the doctrine of *res judicata*.

In the opposition the issue was likelihood of confusion in trade based on Cooperatives' asserted ownership of and superior rights in the trademark and trade name MIDLAND and damage that would ensue by registration of the mark to International for electric meters. In comparison, in the infringement action in the District Court, Cooperatives likewise asserted ownership of and superior rights in the MIDLAND trademark and trade name, as a basis to enjoin International from using the term in any way, shape or form in connection with any of its electrical or electronic products, including meters, and to claim damages for past infringement and "such other and further relief as the Court may deem meet and just."

The factual allegations relating to Cooperatives' use of MIDLAND for various electrical devices, meters and other goods appearing in the complaint are almost identical to those asserted in the notice of opposition. In both instances Cooperatives relied on its ownership of a registration covering the trademark MIDLAND for various petroleum products.

The District Court found that most types of merchandise in Cooperatives' line were not within the scope of International's line. In fact, International's electric meters were found as having no counterpart in Cooperatives' line of merchandise. The court made no finding that Cooperatives had ever used MIDLAND for electric meters or related goods and no ruling that Cooperatives had any right to use the term in connection with such goods.

With plenary jurisdiction of the parties and the subject matter involved, the District Court held that International had used, and had the right to continue using, the mark MIDLAND for all of its goods, including electric meters. It imposed no restrictions, qualifications or limitations on the right of International to use the mark.

It is manifest from the record that the sole issue before the board by reason of the allegations of the application and the notice of opposition was grounded on section 2(d) of the Trademark Act of 1946 (15 U.S.C. § 1052(d)) proscribing registration of a trademark if it:

Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used * * * by another * * *, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * *.

We are not impressed with Cooperatives' attempt now, for the first time in this court, to invoke the provisions of section 2(e) of the Trademark Act which proscribes registration of a trademark which is merely descriptive or geographically descriptive. No issue relating to section 2(e) was raised in the District Court or before the board.

■ Confronted with a judicial determination that there was no likelihood of confusion, the only issue before the board upon which to sustain the opposition had been resolved against Cooperatives, whereupon the board applied the doctrine of *res judicata*, holding that Cooperatives was "estopped from asserting in this proceeding that it would be damaged * * *."

Appellant advances the argument that the decision of the board is fallacious because it assumed that an opposer never has standing to maintain an opposition unless he can establish likelihood of confusion in trade. We are not persuaded that the board made any such assumption. The board dealt with the sole issue before it which had been competently resolved in litigation between the parties. It appears to us that on the issues raised in the notice of opposition and decided in the District Court the board, in view of the status of the proceedings before it, had no other alternative.

■ Confronted with an adverse decision, it is not permissible for Cooperatives to invoke the appellate jurisdiction

of this court *de novo* on matters not at issue and hence not determined below. In Robert Hall Clothes, Inc. v. Studds, 286 F.2d 615, 48 CCPA 831 (1961), this court said:

As to the other grounds for its appeal, namely that "ROSE HALL" is geographically descriptive, is not used as a trademark, and is not used in interstate commerce, we do not believe appellant, as a matter of right, can raise these issues at this time since it failed to include them as grounds for these opposition proceedings in the original notice of opposition and we find no amendment in the record which includes them. [Citations omitted.]

We think the observation of this court in Joseph & Feiss Co. v. Joseph Kanner Hat Co., 337 F.2d 1014, 52 CCPA 841 (1964), has relevancy to the instant appeal. The court said:

Coming now to appellant's contention that the mark HENLEY is unregistrable because it is both a geographically descriptive word and a surname, we believe that the board did not err in declining to rule on that contention. It relates to a matter having no relevancy to the present proceedings which involve the question of whether appellee has superior rights in HENLEY as found by the board.

To support its contention that this court should consider the geographical grounds, now urged as a basis for denial of registration, Cooperatives cites several cases. These cases, Model Brassiere Co. v. Bromley-Shepard Co., 49 F.2d 482, 18 CCPA 1294 (1931); United Shoe Machinery Corp v. Compo Shoe Machinery Corp., 56 F.2d 292, 19 CCPA 1009 (1932), and Meehanite Metal Corp. v. International Nickel Co., 262 F.2d 806, 46 CCPA 765 (1959), have no application to the instant situation since the issues therein were raised below and were properly before the court on appeal. In the instant appeal such is not the case. The ground now urged as a basis for refusing registration was not raised in the original proceedings below and was not considered by the board.

Cooperatives asserts here that it "is dealing in the same goods (electric meters) covered by the statement in International's application, and in other closely related goods." It is noted, however, that Cooperatives, in substance, made the same allegation in the District Court. The court found that "most of the items in defendant's line of specialized electrical equipment merchandise *have no counterpart* in plaintiff's line of merchandise * * *." (Emphasis supplied.)

It is our view that the District Court, in response to allegations made by Cooperatives and issues joined by the parties, has judicially determined, adversely to Cooperatives, the vital issues raised by the notice of opposition. The very essence of its defense to the application filed by International that confusion in trade would result with ensuing damages had been finally resolved when proceedings were resumed by the board. The board correctly applied the principle of estoppel. The board, properly, we think, cited in support of its decision Seven-Up Company v. Bubble Up Corporation, Etc., 312 F.2d 472, 50 CCPA 1012 (1963), which involved cancellation proceedings in which the registrant relied on the defense of laches. The petitioner for cancellation sued the registrant for infringement. The defense of laches was again interposed and sustained by the court, whereupon the Trademark Trial and Appeal Board dismissed the proceeding on the ground that the issue of laches had been resolved in the infringement suit. This court affirmed the decision of the board and, in so doing, observed that the question before it was whether the issue of cancellation of Bubble Up's trademark registrations was in issue in the prior action. The court said:

It is the essence of *res judicata* that an end should be put to litigation— that when the parties have previously litigated a cause, they are barred from litigating the matter anew in a separate action. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. If the second suit is for a different cause of action, any facts actually deter-

mined in the first suit between the same parties are conclusively established. This doctine of collateral estoppel is stated by Mr. Justice Harlan in Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355, as follows:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; *and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.*" [Emphasis CCPA.]

We have considered the cases cited and arguments advanced by the appellant and we are not persuaded of reversible error in the decision of the board, which we affirm.

Affirmed.